**In re HARNISCHFEGER INDUSTRIES, INC., et al., Debtors.**

**Jackie Irwin, Plaintiff,**

v.

**Beloit Corporation, et al., Defendants.**

**Bankruptcy No. 99–00272.**

United States Bankruptcy Court, N.D. Alabama, Southern Division.

Feb. 29, 2000.

---

426

Benjamin E. Baker, M. Clay Alspaugh, Birmingham AL, for plaintiff.

Bruce F. Rogers, Thomas W. Thagard, III, Birmingham AL, for BE&K.

James Stempel, Cumberland MD, for Beloit Corp.

### MEMORANDUM OPINION
### AND ORDER

TAMARA O. MITCHELL, Bankruptcy Judge.

This proceeding came before the Court on a motion filed by BE & K Construction Company (hereinafter "BE & K") for an order transferring venue of this adversary proceeding. BE & K seeks to transfer venue of the adversary proceeding to the United States Bankruptcy Court for the District of Delaware, where Beloit Corporation's Chapter 11 case is pending along with several affiliated debtors whose cases are being jointly administered under *In re Harnischfeger, et al.*, Case Numbers 99–

2171 (Harnischfeger) and 99–2177 (Beloit Corporation).

Appearing on December 20, 1999 at the final hearing on the motion were Benjamin E. Baker and M. Clay·Alspaugh, counsel for the Plaintiff, Bruce F. Rogers and Thomas W. Thagard, III, counsel for BE & K, and James Stempel, counsel for the debtor, Beloit Corporation (hereinafter "Beloit"). The sole issue is whether there should be a change of venue for this adversary proceeding by moving it to the Delaware court where Beloit's bankruptcy case is pending.

■ This Court has jurisdiction of the removed cause of action pursuant to 28 U.S.C. § 1334(b), 151, and 157(a) and the district court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This motion to transfer venue is a core proceeding arising in a case under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A).[2] This Court has considered the content of the court's files,[3] the pleadings and briefs filed, the testimony, the documentary evidence admitted, the arguments of counsel, and the law regarding the issue before the Court. Accordingly, this Court finds and concludes as follows.[4]

## I. FINDINGS OF FACT

This proceeding arises out of a personal injury action filed by Jackie Irwin on January 21, 1998 in the Circuit Court of Jefferson County, Alabama. On June 7, 1999, Beloit, a named defendant in the state court action, filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware and the case was assigned to the Honorable Peter J. Walsh, Chief Bankruptcy Judge. On July 12, 1999, Beloit filed a Suggestion of Bankruptcy in the state court action. Co-defendant BE & K filed a Notice of Removal on August 9, 1999 pursuant to 28 U.S.C. § 1452[5] and Rule 9027 of the Federal Rules of Bankruptcy Procedure.[6]

The cause of action that was removed from the state court is based on the following events. On or about January 23, 1997, Jackie Irwin (hereinafter "Plaintiff" or "Ms. Irwin") was employed at Tenneco Packaging, Inc. in Counce, Tennessee.[7] The Plaintiff alleges that while working in the scope of her employment she suffered an injury to her eye while operating the No. 2 paper machine, which was designed

---

1. This Court's grounds for jurisdiction are detailed in section (II)(B) *infra.*

2. 28 U.S.C. § 157(b)(2)(A) provides:
 (b)(2)Core proceedings include, but are not limited to—
 (I) matters concerning the administration of the estate.

3. The parties did not object to the Court taking judicial notice of the contents of its file. Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.,* 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.,* 514 F.2d 700, 704 (5th Cir.1975).

4. This Memorandum Opinion and Order constitutes findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52 made applicable to adversary proceedings by Federal Rules of Bankruptcy Procedure 7052.

5. 28 U.S.C. § 1452 provides in part:
 (a) A party may remove any claim or cause of action in a civil action other than a proceeding before the·United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police power or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

6. The Plaintiff has filed a Motion to Remand the proceeding to the Circuit Court of Jefferson County, Alabama. (AP Docket No. 4). This motion has not been set for a final hearing.

7. The testimony reflected that Counce, Tennessee, is a two to three hour drive from Birmingham, Alabama.

and manufactured by Beloit and installed by BE & K. The Plaintiff asserted several causes of action against Beloit, BE & K, Valmet, Inc.,[8] and William Kenyon & Sons, Inc.[9] for her injuries.

After Beloit filed for bankruptcy in Delaware, the non-debtor defendant, BE & K, filed a motion to transfer venue pursuant to Rule 7087 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 1412[10] arguing that Delaware and not Birmingham is the proper venue. BE & K alleges, *inter alia*, that it has an indemnification agreement with Beloit which would allow BE & K to pursue repayment from Beloit for any judgment against BE & K in the Plaintiff's case. Because of this potential cross-claim, BE & K seeks to transfer venue to Delaware because of the impact that it claims any judgment might have on Beloit's bankruptcy estate. (BE & K Brief. AP Docket No. 3A).

At the hearing, in addition to the live testimony offered, the parties presented numerous exhibits which included: Beloit's bankruptcy schedules and statement of financial affairs, depositions from several potential witnesses, and some written discovery. The evidence presented showed that BE & K is incorporated in Delaware with its principal place of business in Birmingham, Alabama. (BE & K Exhibit 2). Beloit, also incorporated in Delaware, has its principal place of business in Deerfield, Illinois. (BE & K Exhibit 2). BE & K's first witness in support of the motion to transfer was Mr. Thomas Thagard, co-counsel for BE & K. He testified that most of BE & K's witnesses are located outside Alabama, but on cross-examination admitted that there are no potential witnesses for BE & K located in Delaware.[11] The only BE & K witnesses that would be located in Alabama would be BE & K representatives and, according to the testimony, most of those representatives are not located in Alabama. Mr. Thargard testified that BE & K asserts an indemnification agreement against Beloit for any personal injuries damages against BE & K.[12] Mr. Thagard on behalf of BE & K sent a letter to Beloit's counsel making a written demand for indemnification to Beloit for expenses in this litigation. (BE & K Exhibit 3). There has been no written response.

BE & K's final witness was Mr. André Toffel, who was admitted without objection as an expert legal witness on bankruptcy and testified about the impact of this proceeding's venue on the economics of estate administration.[13] After reviewing the law on transfer of venue actions and the facts of the instant case, Mr. Toffel stated that in his opinion the relevant factors favor transferring the matter to the Delaware court. Mr. Toffel's conclusions appear to

8. While this case was still in the Jefferson County Circuit Court, the Plaintiff agreed to dismiss Valmet, Inc. as a defendant on November 17, 1998. The agreement provided that the dismissal was without prejudice until February 11, 1999, and would convert to a dismissal with prejudice on the following day.

9. After the case was removed to this Court, the Plaintiff moved that William Kenyon & Sons be dismissed with prejudice and the motion was granted on October 15, 1999. (AP Docket No. 11).

10. BE & K argued improper forum at the state court level, too, and sought to have the matter dismissed on that basis. BE & K's motion to dismiss based on improper forum was denied by Judge Thorn on August 4, 1998.

11. From Mr. Thagard's testimony, it appears that several BE & K representatives would testify, "most" of whom are located outside Alabama; BE & K would expect to have one witness from Arkansas, one from New Jersey, and several from Tennessee.

12. It should be noted that the Plaintiff argues that BE & K has liability separate and apart from that which might be covered under the indemnification agreement.

13. Mr. Toffel's testimony established that he has been a bankruptcy attorney practicing in Birmingham for eighteen (18) years. He has experience with complex chapter 11 cases, has served as a bankruptcy panel trustee, and has occasionally lectured and published materials on bankruptcy practice.

be based on the notion that the judge presiding over the bankruptcy case would be in the best position to know what impact, if any, this adversary proceeding would have on Beloit's assets and liabilities in the main case.[14] Mr. Toffel noted that if there is a judgment in this matter against Beloit, the Delaware court would have to deal with that judgment as a claim against the estate. The Delaware court would also be the Court to entertain any Motion for relief from the automatic stay to permit BE & K to seek indemnity from Beloit and to determine other matters that might arise from the fact that BE & K is already listed as a creditor in Beloit's main bankruptcy case.

■ Considering all of the matters in which the home court[15] would be making decisions related to this proceeding, Mr. Toffel concluded that having all of these other matters heard before Judge Walsh would be the most economical and efficient for Beloit's estate. On cross-examination, Mr. Toffel admitted that BE & K does not need to wait on the outcome of this adversary proceeding to file a claim in the main case due to the underlying contract with Beloit. Mr. Toffel also noted that there are over thirty actions pending against Beloit in various jurisdictions.[16] However, in those matters as well as the matter currently before this Court, Beloit has yet to formulate its "litigation strategy" or to take any position on this Motion.

Mr. Clay Alspaugh, a personal injury attorney specializing in premises and products liability and currently employed as Plaintiff's counsel, was called as a witness for the Plaintiff. Mr. Alspaugh testified to the logistical problems that he would expect his firm to encounter in pursuing a case such as this in Delaware and not in Birmingham. Mr. Alspaugh stated that very little discovery has been completed and that, due to its proximity to the parties, it would be less expensive to have the bankruptcy court in Birmingham supervise discovery and other pretrial matters rather than traveling to and from Delaware.[17] Mr. Alspaugh also testified that flying witnesses to and from Delaware instead of driving to Birmingham from Tennessee (the location of the injury) would substantially raise the costs of the litigation and cause other associated impediments. Based on his experience with similar matters, he estimated that the trial would last from one week to eight days and that the costs of this litigation would be substantially higher in Delaware because of that court's rule requiring representation by local counsel. Although Mr. Alspaugh, as of the evidentiary hearing date, had not directly contacted a Delaware attorney about the specifics of this case, he testified that he assumes local counsel would most likely charge an hourly rate and not accept a contingency-based fee. He stated that his expenses would rise substantially by the cost of travel, lodging, and food for Mr.

14. Although Mr. Toffel mentioned in his testimony that Beloit had debt of over $700 million dollars, this Court will also consider the actual amount listed on the schedules which reveals that Beloit's liabilities total $744,300,-129.41. (BE & K Exhibit 18).

15. The "home court" is the court in which the debtor's bankruptcy case is pending. Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings*, 62 Am. Bankr. L.J. 37, 38 (1988) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 447 (1977) and *In re Green Tie Realty Corp.*, 14 B.R. 923, 924 (Bankr. S.D.N.Y.1981)).

16. BE & K Exhibit 20 is an "Adverse Pending Litigation Report" prepared by Mr. James Stempel, counsel for Beloit. It reflects that there are thirty-two (32) pending matters. Of these thirty-two (32) matters, eight (8) are commercial matters, fifteen (15) are personal injury and/or property damage actions, and nine (9) are labor and employment disputes.

17. He stated that seven or eight employee depositions had been taken and some written discovery had begun. In BE & K's response to the Plaintiff's first interrogatories, BE & K states that to the extent that there are additional documents relating to the installation of the paper machine, they would be located at BE & K's offices in Birmingham. (Plaintiff's Exhibit B).

Ben Baker (his co-counsel) and himself. Furthermore, Mr. Alspaugh stated that his firm would incur many of these same travel-related expenses to attend any hearings on motions, discovery, and other pretrial matters in connection with the case.

## II. CONCLUSIONS OF LAW

### (A)Removal of the State Action

Section 1446(a) of Title 28 of the United States Code[18] requires that any defendant in a civil proceeding pending in state court seeking removal of that action to federal district court must file a notice of removal with the district court within which the action is pending. The grounds supporting removal are found in 28 U.S.C. § 1452(a).[19] Ms. Irwin initiated this action on January 21, 1998 in the Circuit Court of Jefferson County, Alabama, BE & K timely filed a Notice of Removal of the state action with this Court pursuant to Rule 9027(a)(2) of the Federal Rules of Bankruptcy Procedure.[20] The Plaintiff has not alleged any procedural defect in BE & K's notice of removal or the timeliness in

**18.** 28 U.S.C. § 1446(a) provides, in part:

> A defendant or defendants desiring to remove any civil action ... from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

**19.** 28 U.S.C. § 1452(a) provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police power or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

**20.** Fed. R. Bankr.P. 9027(a)(2) provides in part:

which it was filed. Therefore, this Court concludes that the cause of action was properly and timely removed to this Court.

### (B) Jurisdiction of the Removed Proceeding

■ BLACK'S LAW DICTIONARY defines jurisdiction as "the power of the court to decide a matter in controversy and presupposes the existence of a duly constituted court with control over the subject matter and the parties." BLACK'S LAW DICTIONARY 853 (6th ed.1990) (citation omitted). This Court has previously stated that jurisdiction "is the authority of a court to adjudicate the legal dispute before it." *In re Bruno's*, 227 B.R. 311, 320 (Bankr. N.D.Ala.1998). Bankruptcy courts derive their jurisdiction by a conjunctive reading of three federal statutes enacted by Congress as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 codified in 28 U.S.C. §§ 1334, 151, and 157.[21]

■ 28 U.S.C. §§ 1334(a)[22] and (b)[23] respectively vest original jurisdiction over

> If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay ... (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

**21.** *See Burlingame v. Whilden (In re Whilden )*, 67 B.R. 40, 41–42 (Bankr.M.D.Fla.1986); *In re Oceanquest Feeder Service, Inc.*, 56 B.R. 715, 718–719 (Bankr.D.Conn.1986); Lawrence P. King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984*, 38 VAND. L. REV. 675 (1985).

**22.** 28 U.S.C. § 1334(a) provides:

> Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

**23.** 28 U.S.C. § 1334(b) provides:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the

bankruptcy cases and proceedings in federal district courts. Because bankruptcy cases and proceedings are concerned with adjudicating interests of various parties in property of the debtor's estate, the type of jurisdiction relevant in bankruptcy adjudication is subject matter jurisdiction over all of the debtor's interests in property, and is not limited to personal jurisdiction over the debtor and other parties holding interests in this property.[24] 28 U.S.C. § 151[25] designates that the bankruptcy judges in each federal district constitute a unit of the district court and that each bankruptcy judge has authority to preside over "any action, suit or proceeding" as defined in §§ 151–158. Further, 28 U.S.C. § 157(a)[26] provides that each district court may refer any or all bankruptcy cases and proceedings to the bankruptcy judges for the district. Pursuant to this authority, the United States District Court for the Northern District of Alabama issued an amended General Order of Reference[27] which provided for an automatic referral of all cases and proceedings in cases under the Code to the bankruptcy court. Thus, in the Northern District of Alabama, all bankruptcy cases and proceedings should be filed directly with the bankruptcy court. *Accord St. Vincent's Hospital v. Norrell (In re Norrell )*, 198 B.R. 987, 992 n. 3

(Bankr.N.D.Ala.1996) (citing *Lone Star Industries, Inc. v. Liberty Mutual Ins.*, 131 B.R. 269, 272 (D.Del.1991)). Therefore, pursuant to 28 U.S.C. §§ 1334, 151, 157, and the district court's amended General Order of Reference, this Court has jurisdiction over the removed cause of action, which is now an adversary proceeding in bankruptcy. *Accord Bruno's*, 227 B.R. at 321.

### *(C)Proper Venue for the Adversary Proceeding*

 Venue is different from jurisdiction in that "[j]urisdiction is the power to adjudicate, while venue, which relates to the place where judicial authority may be exercised, **is intended for the convenience of the litigants.**" *Still v. Rossville Crushed Stone Co.*, 370 F.2d 324, 325 (6th Cir.1966) (per curiam) (emphasis added). *See also Robert E. Lee & Co., Inc. v. Veatch*, 301 F.2d 434, 436 (4th Cir.1961) ("Venue is a concept old in our jurisprudence. As opposed to jurisdiction, which relates to the territorial power of a court to hear a controversy, venue relates only to the place where a litigant may require the case to be heard. It is a privilege which permits the one in whose favor it runs to have the case tried at a convenient

district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

**24.** Jurisdiction over bankruptcy issues is provided by 28 U.S.C. § 1334(e), which provides: The district court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of commencement of such case, and of the property of the estate.

**25.** 28 U.S.C. § 151 provides: In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular

or special session of the court, except as otherwise provided by law or by rule or by order of the district court.

**26.** 28 U.S.C. § 157(a) provides:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district.

**27.** The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

place."). Clearly, then, simply because a court has jurisdiction over a case does not mean that it is the proper venue for the case to be heard.

■ Two statutes are particularly relevant when discussing whether or not venue is proper in an action under the Bankruptcy Code. Which statute is relevant depends on whether the action is a bankruptcy case (governed by 28 U.S.C. § 1408) or a bankruptcy "proceeding" (governed by 28 U.S.C. § 1409). The distinction between a bankruptcy "case" and a bankruptcy "proceeding" is easily explained. The Bankruptcy Code provides that a "case" is commenced upon the filing of a petition under one of the chapters of the Bankruptcy Code and has the immediate effect of granting broad relief from all collection activity by creditors.[28] One recognized authority on bankruptcy defines the bankruptcy "case" as "the umbrella under which all of the proceedings which follow the filing of a bankruptcy petition take place." 1 *Collier on Bankruptcy* ¶ 3.01[3] at 3–13 (15th ed. rev.1999). Proper venue for bankruptcy cases is governed by 28 U.S.C. § 1408. Section 1408 provides that a bankruptcy case may be filed in the district court[29] within which the debtor's domicile, residence, principal place of business, or principal assets have been located for at least the greater portion of the preceding 180 days.

■ A bankruptcy "proceeding," however, "refers to a litigated matter arising within a case during the course of administration of an estate." *Blevins Electric, Inc. v. First American Nat'l Bank (In re Blevins)*, 185 B.R. 250, 254 (Bankr.E.D.Tenn.1995) (quoting the Advisory Committee Note to former Bankruptcy Rule 101); 2 *Collier on Bankruptcy* ¶ 301.03 at 301–4 (15th ed. rev. 1999)(same).[30] Proper venue of proceedings in bankruptcy is governed by 28 U.S.C. § 1409. This statute provides that proceedings in bankruptcy may be filed (but are not required to be filed) in the district court in which the case is pending. § 1409(a). The statute further establishes that proceedings in bankruptcy fall into one of three categories: (1) proceedings arising under the Bankruptcy Code; or (2) proceedings arising in; or (3) proceedings related to a bankruptcy case initiated under the Bankruptcy Code. 28 U.S.C. § 1409(d).

■ "Arising under" proceedings are those that "involve a cause of action created or determined by a statutory provision of title 11." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987). *See also Continental Nat'l Bank of Miami v. Sanchez, (In re Toledo)*, 170 F.3d 1340, 1345 (11th Cir.1999) "Arising in" proceedings refers to "those 'administrative' matters that arise only in bankruptcy cases.

---

**28.** 11 U.S.C. § 301 provides:

> A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

*See also* 11 U.S.C. § 362(a) ("a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ...").

**29.** As discussed *supra,* pursuant to 28 U.S.C. §§ 151 and 157(a), the district may issue an order referring all bankruptcy cases and proceedings to the bankruptcy judges comprising that district's unit. The district court for the Northern District of Alabama has issued a general order of reference automatically referring all bankruptcy cases and proceedings to the bankruptcy court within the district. Accordingly, all cases and proceedings in bankruptcy are to be filed directly with the bankruptcy court.

**30.** Under some circumstances, an adversary proceeding in bankruptcy may occur after the administration of the estate. *See Fidelity & Deposit Co. Of Maryland v. Morris (In re Morris)*, 950 F.2d 1531 (11th Cir.1992).

In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Wood,* 825 F.2d at 97. *See also In re Toledo,* 170 F.3d at 1345. The personal injury action before this Court does not belong to either of these categories. Therefore, if this Court is to retain jurisdiction, it must be a "related to" proceeding under title 11.

■■■■ A proceeding is "at least related to" the bankruptcy case where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Wood,* 825 F.2d at 93 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), and citing as additional authority *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987); *In re Salem Mortgage Co.,* 783 F.2d 626, 634 (6th Cir.1986)).[31] The Eleventh Circuit elaborated on this definition: " 'An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.' " *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990) (quoting *Pacor,* 743 F.2d at 994). *See also Munford v. Munford (In re Munford Inc.),* 97 F.3d 449, 453 (11th Cir. 1996) (quoting same). Thus, under the Eleventh Circuit's broad interpretation of "related to," a civil proceeding against a debtor to recover damages under breach of contract and /or tort theories which "could alter the debtor's rights, liabilities, options, or freedom of action" with respect to subsequent adjudication in bankruptcy of the debtor's interest in property is a "related to" proceeding. *In re Norrell* states that examples of related to proceedings include "proceedings that could have been brought in district or state court absent bankruptcy, causes of action that became property of the estate and suits between parties that affect estates." 198 B.R. at 993 (Bankr.N.D.Ala.1996) (citing *Case Management Manual for United States Bankruptcy Judges,* Federal Judicial Center, 1995). Clearly, of the three types of civil proceedings mentioned, the one with the least connection to the bankruptcy case is a civil proceeding that is merely "related to" the case.

■■■ Based on this broad definition for proceedings which are "related to" a debtor's bankruptcy case as defined by the Eleventh and Fifth Circuit Courts of Appeal and by the Federal Judicial Center's manual for bankruptcy judges, Ms. Irwin's cause of action is, at the very least, a proceeding related to the Beloit's bankruptcy case pending in Delaware because the outcome of Ms. Irwin's litigation could alter Beloit's rights, liabilities, options, and freedom of action with respect to its bankruptcy estate. *Accord Bruno's,* 227 B.R. at 322 (holding that an action for fraud and breach of contract are related to the debtor's bankruptcy because of the outcome of the cause of action could alter the administration of the debtor's estate.); *Thomasson v. AmSouth Bank, N.A.,* 59 B.R. 997, 1004–1005 (N.D.Ala.1986) (holding that a complaint brought in Alabama state court by plaintiffs against debtor and other non-debtor defendants, alleging fraud and misrepresentation with respect to letters of credit, is "at least related to the debtor's bankruptcy case" pending in Texas.). Thus, since this matter is a "related to" proceeding, venue is governed by 28 U.S.C. § 1409.

■■■■ The Plaintiff apparently found no legitimate reason and therefore did not allege prior to or during trial, and did not present any evidence during trial that venue of this cause of action is improper in

---

31. As the Eleventh Circuit recently noted, "[t]he 'related to' connection has been described as 'the minimum for bankruptcy jurisdiction.' " *In re Toledo,* 170 F.3d at 1345 (quoting Scott Fruehwald, *The Related to Subject Matter Jurisdiction of Bankruptcy Courts,* 44 DRAKE L.REV. 1, 7 (1995)).

this district. Therefore, this Court concludes Ms. Irwin's cause of action is a proceeding in bankruptcy and venue of the proceeding is proper in this Court.[32] The issue remains whether a transfer to another venue is appropriate.

### (D) Transfer of Venue Statutes

Most of the published decisions regarding transfer of venue for a bankruptcy proceeding cite two different statutes for such authority. Some courts have determined that the general change of venue statute for civil actions pending in district courts, 28 U.S.C. § 1404(a), applies to a request for transfer of a bankruptcy proceeding that is "related to" the bankruptcy case.[33] They reason that because 28 U.S.C. § 157(a) distinguishes between proceedings "arising under Title 11," "arising in a case under Title 11" and those "related to a case under Title 11," "related to" proceedings are not proceedings "under Title 11" and therefore are governed by the general change of venue statute, 28 U.S.C. § 1404(a).[34]

**32.** Although 28 U.S.C. § 1409 provides that proceedings in bankruptcy may be filed (but are not required to be filed) in the district court in which the case is pending, BE & K could not have properly removed the cause of action directly to the United States District Court for the District of Delaware where Beloit's Chapter 11 case is pending. 28 U.S.C. § 1446(a), and Rule 9027(a)(2) of the Federal Rules of Bankruptcy Procedure allow removal only to the district court in which the state cause of action is pending. *See National Developers, Inc. v. Ciba–Geigy Corp. (In re National Developers, Inc.)*, 803 F.2d 616 (11th Cir.1986).

**33.** *See, e.g., Searcy v. Knostman*, 155 B.R. 699, 706 (S.D.Miss.1993); *In re Thomson McKinnon Sec., Inc.*, 126 B.R. 833, 834–835 (S.D.N.Y.1991); *Goldberg Holding Corp. v. NEP Productions, Inc.*, 93 B.R. 33, 34 (S.D.N.Y.1988).

**34.** *See Searcy*, 155 B.R. at 706; *In re Thomson McKinnon Sec., Inc.*, 126 B.R. at 834–835; *Goldberg Holding Corp.*, 93 B.R. at 34.

**35.** *Storage Equities, Inc. v. Delisle*, 91 B.R. 616, 619 (N.D.Ga.1988). *See Twyman v. Wedlo, Inc.*, 204 B.R. 1006 (Bankr.N.D.Ala.1996); *SBKC Service Corp. v. 1111 Prospect Partners*

However, most courts look to 28 U.S.C. § 1412 for authority to determine the outcome of a motion to transfer venue of a cause of action removed to the bankruptcy court.[35] This Court agrees that the appropriate authority for transfer of bankruptcy proceedings is 28 U.S.C. § 1412 for two reasons. First, the plain language of § 1412 states that it applies to a change of venue concerning a case or proceeding under Title 11 (the Bankruptcy Code), while the language in § 1404(a) refers only to a "civil action" and fails to mention language peculiar to bankruptcy jurisdiction and venue statutes, including "case," "proceeding" and "Title 11." Second, Rule 7087 of the Federal Rules of Bankruptcy Procedure which governs adversary proceedings of state actions removed to bankruptcy court pursuant to 28 U.S.C. § 1452, references 28 U.S.C. § 1412, not § 1404(a). *See In re Storage Equities, Inc.*, 91 B.R. 616, 619 (N.D.Ga.1988); 1 *Collier on Bankruptcy* ¶ 4.04[4][a] and [b] (15th ed. rev. 1999).[36] Thus, the Court concludes that 28

(*In re 1111 Prospect Partners*), 204 B.R. 222 (Bankr.D.Kan.1996); *Wittes v. Interco Inc.* (*In re Interco, Inc.*), 139 B.R. 718 (Bankr.E.D.Mo. 1992); *In re Waits*, 70 B.R. 591 (Bankr. S.D.N.Y.1987); *In re Oceanquest Feeder Serv., Inc.*, 56 B.R. 715 (Bankr.D.Conn.1986); *In re Whilden*, 67 B.R. 40 (Bankr.M.D.Fla.1986); *General Instrument Corp. v. Financial and Bus. Services, Inc.* (*In re Finley*), 62 B.R. 361 (Bankr.N.D.Ga.1986); *McLemore v. Thomasson*, 60 B.R. 629 (Bankr.M.D.Tenn.1986).

**36.** This Court had previously held that 28 U.S.C. § 1412 was the controlling statute for transfer of venue motions. *Bruno's*, 227 B.R. at 323. At the hearing on the instant matter, there was no objection from any of the parties that § 1412 is the applicable statute for BE & K's change of venue motion. Thus, this Court does not feel that it needs further grounds to establish the application of § 1412 to BE & K's motion. However, other grounds are discussed in *Lipshie v. AM Cable TV Indus., Inc.* (*In re Geauga Trenching Corp.*), 110 B.R. 638, 654 (Bankr.E.D.N.Y.1990) (holding that § 1412 is the applicable statute because a motion to change venue is a core proceeding in bankruptcy); 1 *Collier on Bankruptcy* ¶ 4.04[4][b] (15th ed. rev.1999) (noting that § 1412 is the applicable statute for change of

U.S.C. § 1412 is the applicable statute for determining whether a transfer of proceedings related to the bankruptcy case is appropriate. *Bruno's*, 227 B.R. at 323.

### (E) Transfer of Venue Under 28 U.S.C. § 1412

#### (1) Preliminary Considerations

 The two grounds stated in 28 U.S.C. § 1412 under which a district court [37] may transfer a case or proceeding "under Title 11" to a district court for another federal district are "in the interest of justice *or* for the convenience of the parties." Because the criteria under § 1412 is phrased in the disjunctive, the bankruptcy case or proceeding is transferrable upon a sufficient showing of either the interest of justice or for the convenience of the parties. *Bruno's*, 227 B.R. at 324; *In re Toxic Control Technologies, Inc.*, 84 B.R. 140, 143 (Bankr.N.D.Ind. 1988). Transfer of venue pursuant to § 1412 requires a case-by-case analysis

that is subject to broad discretion of the court.[38] The party seeking the change or transfer of venue has the burden to show that transfer is appropriate and further must do so by a preponderance of the evidence.[39]

 The "interest of justice" prong is "a broad and flexible standard which must be applied on a case-by-case basis." *In re Manville Forest Products Corp.*, 896 F.2d at 1391. Some courts have held that the most important factor to be considered in determining whether to transfer venue of a bankruptcy proceeding under the interest of justice prong is whether transfer would promote the economic and efficient administration of the bankruptcy estate.[40] Different courts have applied different factors to determine what is in the interest of justice for resolving a change of venue request. Having considered the factors in those cases, this Court finds the following factors applicable:

(a) Economics of estate administration[41]

venue regarding bankruptcy proceedings because, unlike § 1404, § 1412 does not require that the district court to which the movant seeks transfer must be a district court in which the proceeding could initially have been brought).

37. As discussed *supra*, pursuant to 28 U.S.C. §§ 151, 157(a), and the amended Order of Reference, this Court has the authority to determine whether to transfer venue of the removed state action to the Delaware bankruptcy court in which Beloit's Chapter 11 case is pending.

38. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (motions for transfer under § 1404(a) must be made on "an 'individualized, case-by-case consideration of convenience and fairness,'" quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)); *In re Geauga Trenching Corp.*, 110 B.R. at 654; *In re Whilden*, 67 B.R. at 42.

39. *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1390 (2d Cir. 1990); *Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Co., Inc.)*, 596 F.2d 1239, 1241 (5th Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *Thomas-*

· *son*, 59 B.R. at 1000; *Twyman v. Wedlo, Inc.*, 204 B.R. 1006, 1014 (Bankr.N.D.Ala.1996); *Continental Airlines, Inc. v. Chrysler (In re Continental Airlines, Inc.)*, 133 B.R. 585, 587 (Bankr.D.Del.1991).

40. *In re Manville Forest Products Corp.*, 896 F.2d at 1391; *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d at 1247; *Thomasson*, 59 B.R. at 1000 (citing *In re Butcher*, 46 B.R. 109, 112 (Bankr.N.D.Ga.1985)); *Twyman*, 204 B.R. at 1014 (citing same); *In re Continental Airlines, Inc.*, 133 B.R. at 588.

41. *See In re Manville Forest Products Corp.*, 896 F.2d at 1391 (citing "the efficient administration of bankruptcy estates" as a factor under the "interest of justice" prong of § 1412); *Thomasson*, 59 B.R. at 1000 ("The most important factor is whether the transfer of the proceeding would promote the economic and efficient administration of the estate." quoting *In re Butcher*, 46 B.R. 109, 112 (Bankr.N.D.Ga.1985); *Twyman v. Wedlo*, 204 B.R. at 1014 (quoting same)); *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr.W.D.Pa.1990)). Many courts hold that the most important factor in analyzing a transfer of venue request under § 1412 is "the economic and efficient administration of the

(b) Presumption in favor of the "home court" [42]

(c) Judicial efficiency[43]

(d) Ability to receive a fair trial[44]

(e) The state's interest in having local controversies decided within its borders, by those familiar with its laws[45]

estate." *See supra* note 40 and accompanying text. That factor is essentially broken down into "economics of estate administration" and "judicial efficiency" in this Court's analysis. *See infra* sections (II)(E)(2)(a) and (b).

**42.** Several courts find that this is the only factor to consider, thus making a transfer to the home court virtually automatic. *See Aztec Industries, Inc. v. Standard Oil Co., et al. (In re Aztec Industries, Inc.),* 84 B.R. 464, 467 (Bankr.N.D.Ohio 1987); *Kinney Systems, Inc. v. Intermet Realty Partnership, et al. (In re Convent Guardian Corp.),* 75 B.R. 346, 347 (Bankr.E.D.Pa.1987); *Colarusso v. Burger King Corp.,* 35 B.R. 365, 366–68 (Bankr. E.D.Pa.1984). This Court disagrees.

The Supreme Court has stated that the plain meaning of legislation should be conclusive, except in rare cases where literally interpreting a statute would produce a result "demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises,* 489 U.S 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citation omitted). As discussed in section (II)(D) *supra,* 28 U.S.C. § 1412 is the relevant section for determining change of venue. The statute provides that a case or proceeding under title 11 **"may"** be transferred to another district. 28 U.S.C. § 1412 (emphasis added). This Court assumes that Congress understands that under the procedure for removal, discussed in section (II)(A) *supra,* a proceeding which was already pending in a state court is removed only to the district court for the district where the civil action is pending. 28 U.S.C. § 1452(a). *See Furr v. Barnett Bank of Marion County (In re S & K Air Power of Florida),* 166 B.R. 193, 194 (Bankr.S.D.Fla.1994) ("[S]tate court actions must be removed to the district court for the district in which the case is pending.").

When drafting § 1412, Congress could have easily provided one method for transferring cases to another district and another for transferring proceedings that would have automatically transferred all proceedings to the home court. However, the enacted statute treats them equally and contains the word "may." Therefore, since the statutory scheme both permits proceedings to be removed to a district other than the home court and plainly does not make the transfer mandatory, this Court rejects those cases which stand for the notion that a court has no discretion when considering a motion to transfer and believes that those cases which treat the location of the home court as a presumption or as a factor to consider are correct in their interpretation of the law governing transfer of venue proceedings. *See Foxmeyer Health Corp. v. McKesson Corp. (In re Foxmeyer Corp.),* 217 B.R. 511, 515 (Bankr.N.D.Tex. 1997) (stating that "presumptively," civil adversary proceedings should be venued with the underlying bankruptcy case); *Sudbury, Inc. v. Dlott (In re Sudbury),* 149 B.R. 489, 493 (Bankr.N.D.Ohio 1993) (noting the "general presumption that all matters involving a bankruptcy should be tried in the court in which the bankruptcy is pending") (quoting *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc.,* 24 B.R. 141, 143 (Bankr. S.D.N.Y.1982)); *Nixon Machinery Co. v. Roy Energy, Inc. (In re Nixon Machinery Co.),* 27 B.R. 871, 873 (Bankr.E.D.Tenn.1983) ("general rule" is that "the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction"). *See generally* Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings,* 62 AM. BANKR. L.J. 37, 38 (1988) (citing H.R. REP. NO. 595, 95th Cong., 1st Sess. 446–447 (1977)).

**43.** *Thomasson,* 59 B.R. at 1000–1001; *Twyman,* 204 B.R. at 1014 (citing *In re Legend Indus., Inc.,* 49 B.R. 935, 938 (Bankr. E.D.N.Y.1985)); *See In re Manville Forest Products Corp.,* 896 F.2d at 1391 (citing "judicial economy" as a factor under the "interest of justice" prong of § 1412). Included in "judicial efficiency" are familiarity with the substantial issues in the removed state action and familiarity with the law to be applied in the action (i.e., the "learning curve"); *In re Interco,* 139 B.R. 718, 720 (Bankr.E.D.Mo. 1992).

**44.** *Thomasson,* 59 B.R. at 1000; *Twyman,* 204 B.R. at 1014 (citing *In re Legend Indus., Inc.,* 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985)); *St. Johnsbury Trucking Co., Inc. v. Bankers Trust Co.,* 1994 WL 18686, *4 (Bankr.D.Vt.1994) (citing *In re Manville Forest Products Corp.,* 896 F.2d 1384, 1391 (2d Cir.1990)); *In re Continental Airlines, Inc.,* 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.,* 115 B.R. 857, 862 (Bankr.W.D.Pa.1990)).

**45.** *Twyman v. Wedlo,* 204 B.R. at 1014 (citing *In re Legend Indus., Inc.,* 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985)); *In re Continental Airlines, Inc.,* 133 B.R. at 588 (citing *In re South-*

(f) Enforceability of any judgment rendered[46]

(g) Plaintiff's original choice of forum[47]

■■■ Although the second prong of the § 1412 test, "convenience of the parties" does not explicitly include consideration of the convenience of the witnesses, by implication the Court should consider the witnesses. 1 *Collier on Bankruptcy* ¶ 4.04[4][a] (15th ed. rev.1999). However, where the movant only shows that inconvenience will merely be shifted from one party to another, the court should deny the change of venue motion. *In re Geauga Trenching Corp.*, 110 B.R. at 654; *De Rosa v. C.P.P. Corp. (In re Legend Indus., Inc.)*, 49 B.R. 935, 938 (Bankr.E.D.N.Y. 1985). The factors this court deems applicable to this second prong of § 1412 are:

(a) Location of the plaintiff and defendant[48]

(b) Ease of access to necessary proof[49]

(c) Convenience of witnesses[50]

(d) Availability of subpoena power for the unwilling witnesses[51]

(e) Expense related to obtaining witnesses[52]

## (2) Analysis Under the "Interest of Justice" Prong

### (a) Economics of estate administration

■■■ As discussed *supra*, 28 U.S.C. § 1334(e) grants to the bankruptcy court jurisdiction over the debtor's property. Because much of what occurs in bankruptcy is concerned with the proper administration of the debtor's estate, it should come as no surprise that the "economics of estate administration" factor is usually the most important factor for courts to consider in deciding whether to transfer venue.[53] Therefore, this Court will review the potential impact upon the administration of Beloit's estate by the Delaware court if the proceeding is not transferred. Also, this Court will consider the Delaware court's ability to efficiently administer the bankruptcy estate if a cause of action related to contractual and tortious conduct is not controlled by that court as the home court.

The movant in this matter (BE & K) presented a great deal of testimony regarding the economic impact that the venue of this proceeding would have on the estate.[54] Mr. Toffel testified at length on direct examination to persuade this Court that if all of the matters were consolidated in Delaware, the Delaware court could

---

*winds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr. W.D.Pa.1990)); *In re Toxic Control Technologies, Inc.*, 84 B.R. 140 (Bankr.N.D.Ind.1988).

**46.** *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr.W.D.Pa.1990)).

**47.** *Bruno's*, 227 B.R. at 325; *In re Foxmeyer Corp.*, 217 B.R. at 515.

**48.** *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr.W.D.Pa.1990) and *In re Allegheny, Inc.*, 68 B.R. 183, 191 (Bankr. W.D.Pa.1986)). Location as used here refers to the parties' physical location or domicile.

**49.** *Thomasson*, 59 B.R. at 1000; *Twyman*, 204 B.R. at 1014 (citing *In re Legend Indus., Inc.*, 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985)); *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr.W.D.Pa.1990)); *In re*

*Toxic Control Technologies, Inc.*, 84 B.R. 140 (Bankr.N.D.Ind.1988).

**50.** *Thomasson*, 59 B.R. at 1000; *Twyman*, 204 B.R. at 1014 (citing *In re Legend Indus., Inc.*, 49 B.R. 935, 938 (Bankr.E.D.N.Y.1985)).

**51.** *In re Continental Airlines, Inc.*, 133 B.R. at 588 (citing *In re Southwinds Assocs., Ltd.*, 115 B.R. 857, 862 (Bankr.W.D.Pa.1990)); *In re Texaco, Inc.*, 89 B.R. 382, 388 (Bankr. S.D.N.Y.1988); *In re Toxic Control Technologies, Inc.*, 84 B.R. 140 (Bankr.N.D.Ind.1988).

**52.** *Id.*

**53.** *See supra* note 40.

**54.** *Compare Bruno's*, 227 B.R. at 326 (noting that the movant failed to present evidence regarding whether transfer of the proceeding would promote greater economy or detrimentally impact the court's administration of the case).

properly and more efficiently administer all of the matters in relation to Beloit's Chapter 11 case. Mr. Toffel's testimony cited several reasons for transferring this proceeding to Delaware. One of the factors that he cites is the potential for a large jury verdict against BE & K for which Beloit might be responsible due to the indemnity agreement. However, based on the evidence presented, this Court finds that it is unlikely that this one proceeding involving a single personal injury/work-related injury will substantially impair the administration of a bankruptcy case involving liabilities approaching seven hundred fifty million dollars. (Beloit's Schedules. BE & K Exhibit 18). This is especially true considering Mr. Thagard's testimony that Beloit has an insurance policy which would cover any award over three million dollars. Therefore, the maximum impact that this case might have on the entire Beloit estate is three million dollars. This, of course assumes that the Plaintiff is successful in obtaining a judgment against Beloit, or against BE & K who, in turns, proves that it has a cross-claim against Beloit.

■ Mr. Toffel also testified that he believed fewer attorneys would be necessary if this matter were consolidated into one forum, thus lowering the costs of litigation. However, this Court also heard the testimony from Mr. Alspaugh who testified that his firm would have to employ additional local counsel in Delaware if the case were transferred to that location. According to Mr. Alspaugh, Delaware rules require local counsel to be present for all court appearances, including trial. If Mr. Alspaugh's estimation that this trial could last from one week to eight trial days is correct (and this Court has no evidence to the contrary), then the added

expense for the Plaintiff of retaining local counsel in Delaware alone could be significant. The cost of local counsel's presence in court during those times and the added expense of time and money to educate local counsel about the facts of this case, the applicable law, and case history alone are all costs that the Plaintiff would not otherwise have to pay. Therefore, while transferring the case to Delaware may reduce the number of attorneys for BE & K and/or Beloit, it would raise the number of counsel on the Plaintiff's side. Although the Court is certainly concerned about all litigants, the analysis regarding venue should center on the impact on the debtor. No specific testimony was offered as to any additional costs to the debtor if the case is not transferred.

Therefore, while this Court understands BE & K's argument that all matters which could have an impact on Beloit's estate should be heard in Delaware, this Court also believes that any potential impact of this proceeding on Beloit's main case would be slight. In a case with approximately $750 million dollars in liabilities, Ms. Irwin's claim which has a maximum exposure for Beloit of $3 million does little to the overall estate.[55]

■ Finally, Mr. Toffel also noted the possibility that Beloit's main bankruptcy case could be delayed awaiting the outcome of this matter and mentioned several other potential problems with not transferring the case including issues relating to insurance coverage, etc. Mr. Toffel stated that consolidation of the matters into one forum would promote greater economy of administration of the estate. With regards to these other issues, the Court must take into consideration the silence of Beloit in this matter. This motion to transfer venue was pending for over four months before

---

**55.** In fact, the Court would expect this figure to be lower considering that the debt would be an unsecured claim. Therefore, ·Beloit would only have to pay that portion of the

claim that it proposes to pay to that class of creditors in its plan of reorganization. Rarely is this figure 100%.

the final hearing was held and Beloit is well aware of the activity in this proceeding.[56] Nevertheless, Beloit has not joined in BE & K's motion to transfer. In fact, BE & K—not Beloit—removed the case to this Court in the first place. This Court assumes that, as a corporation seeking relief under Chapter 11 of the Code, Beloit is attempting to reorganize its operations and is in the best position to know whether an action is in its best interest. Beloit's refusal to join in the motion to transfer and its passive role in the proceeding indicates that this adversary proceeding does not have as much importance to Beloit's main case as BE & K would have the Court believe.[57] Consequently, this Court finds that the economics of estate administration factor weighs neither in favor of or against the transfer.

**56.** From the beginning, Beloit has been an active participant in the proceedings before this Court. The motion to transfer was served on Beloit's counsel, Mr. Skip Wilson, who appeared at a status conference on August 23, 1999. Since that time Mr. James Stempel, also counsel representing Beloit appeared in person on September 2nd, by telephone on October 13th, November 15th, and November 29th, and traveled from Chicago to Birmingham to appear in person on December 20th, the day the transfer of venue motion was heard.

**57.** Noting that Beloit has not taken any position in the approximately thirty or so actions pending in other courts, it may be that not transferring the cases may be part of Beloit's strategy in dealing with these matters.

**58.** *See In re Sudbury,* 149 B.R. at 493 (citing *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc.,* 24 B.R. 141, 143 (Bankr. S.D.N.Y.1982)); *Colarusso v. Burger King Corp.,* 35 B.R. 365, 368 (Bankr.E.D.Pa.1984) (citing *Stamm v. Rapco Foam, Inc.,* 21 B.R. 715, 724–725 (Bankr.W.D.Pa.1982)); *First Int'l Services Corp. v. Econotech (In re First Int'l Services Corp.),* 47 B.R. 882, 883 (Bankr. D.Conn.1983); *In re Nixon Machinery Co.,* 27 B.R. at 873. *See also* Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings,* 62 Am. Bankr. L.J. 37, 38 (1988) (citing H.R.Rep No. 595, 95th Cong., 1st Sess. 446–447 (1977)).

## (b) Presumption in Favor of the Home Court

A majority of the courts that have considered whether change of venue is appropriate have created a presumption that the bankruptcy court in which the debtor's case is pending, the home court, is the proper venue for adjudicating all proceedings in the case, including state actions removed to a bankruptcy court in which the debtor's case is not pending (referred to as the "conduit court" or "outpost court").[58] This presumption was created in the case law based upon a conclusion reached by the majority of courts considering the issue—both "home courts" and "conduit courts"—that the most important factor to consider in deciding whether to transfer the proceeding is the impact that transfer would have on the economic and efficient administration of the estate.[59] Although created by case

**59.** *In re Nixon Machinery Co.,* 27 B.R. at 873 (citing numerous cases not mentioned below for the conclusion that the most important factor in determining a change of venue request is whether the economic and efficient administration of the estate is furthered by the transfer); *See In re Manville Forest Products Corp.,* 896 F.2d at 1391 (home court concluding that although plaintiff showed that convenience of the parties was promoted by transfer of removed state action to conduit court, lack of proof regarding "efficient administration (of the estate) would cut against transferring venue" to the conduit court); *In re Continental Airlines, Inc.,* 133 B.R. at 587–588 (concluding that defendants in the state action failed to overcome the presumption in favor of the home court adjudicating the proceeding in bankruptcy because defendant failed to present sufficient evidence that the economics of estate administration would be enhanced by transferring the state action to an outpost court where defendant's witnesses and records were located); *In re Sudbury,* 149 B.R. at 493–494 (concluding that defendants in the state action removed by plaintiff /debtor to the home court failed to overcome the presumption in favor of the home court adjudicating the state action as a proceeding in bankruptcy because defendant failed to present sufficient evidence that economic and efficient administration of the estate would be enhanced by transferring the state action to an outpost court where defendant's witnesses and records were located); *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.),* 24 B.R. 141, 143 (Bankr.

law, this intent is supported by the plain language of 28 U.S.C. § 1409, which provides that proceedings in bankruptcy may be filed (but are not required to be filed) in the district court in which the bankruptcy case is pending. Legislative history of the Bankruptcy Code supports the fact that the home court is only a presumption and not conclusive to establishing proper venue. Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings*, 62 Am. Bankr. L.J. 37, 38 (1988) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 446–447 (1977) U.S.Code Cong. & Admin.News 1978 pp. 5963, 6402–02). The fact that BE & K, and not the debtor, is seeking to invoke the "home court" presumption dilutes this presumption in this case. This Court believes that the home court presumption was created to facilitate an economic and efficient administration of the debtor's estate. Stated differently, this presumption exists to help the debtor, not to facilitate forum-shopping for co-defendants. Consequently, in situations such as this, where the debtor is a non-movant in the motion to transfer venue to the home court, this Court finds very little reason to support the home court presumption and will value it less than if the debtor had joined in the motion.[60]

S.D.N.Y.1982) (concluding same under a set of facts nearly identical to those in *Sudbury* ).

60. After all, if the debtor does not wish to invoke this presumption, it is entirely possible that **not** transferring venue is the most economic and efficient means of dealing with the proceeding.

61. If the main case had been assigned to a district court judge who could hear the personal injury matter, this fact would weigh more heavily in the movant's favor. This Court recognizes that § 157(b)(5) addresses several issues, but the other matters have not been raised by either party and will, therefore, not be considered by the Court. *See generally Murray v. Pan American World Airways, Inc. (In re Pan Am Corporation)*, 16 F.3d 513 (2nd Cir.1994); *Broughton v. Celotex Corporation*, 183 B.R. 945 (M.D.Fla.1995).

### (c) *Judicial efficiency*

Judicial efficiency concerns numerous issues, some of which overlap with the other factors: the home court's familiarity with the substantive issues and familiarity with the law to be applied in the proceeding (i.e., the "learning curve"); the caseload of the respective courts and thus whether the time to trial is shorter or substantially longer in one forum as opposed to the other; the respective availability of the courts for resolving discovery disputes and for moving the case toward trial at a reasonable pace given the issues involved. In *Bruno's*, the parties before this Court agreed that Alabama law controlled the issues to be tried. *Bruno's*, 227 B.R. at 327. Such is not the case here. In this matter, the laws of the state of Tennessee appear to control, not those of Delaware or Alabama. Therefore, there is no advantage to either the Alabama or Delaware court regarding the applicable law.

This case is based on a personal injury and pursuant to 28 U.S.C. § 157(b)(5), neither this Court, nor the Delaware bankruptcy court, may hear a "personal injury tort" claim.[61] Thus, if this adversary proceeding goes to trial, it will have to be heard by the district court for the District of Delaware or the district court for the Northern District of Alabama. This Court is equipped to efficiently manage the matters leading up to trial.[62]

62. This Court notes that in the Northern District of Alabama, the district court established over a decade ago that even when a jury has been demanded, the bankruptcy court may supervise discovery, conduct pre-trial conferences and rule on motions. *City Fire Equipment Co., Inc. v. Ansul Fire Protection Wormald U.S., Inc.*, 125 B.R. 645, 649 (N.D.Ala. 1989). Therefore, in cases that begin in bankruptcy but must be heard in the district court for trial, the bankruptcy court is authorized to oversee all matters until the case is ready to be tried. As such, even though the case would not be finally heard in this Court, this Court's knowledge and familiarity with the case would not be wasted if the case was not transferred to Delaware.

As a result of having read all of the state court pleadings in preparation for the hearing on this motion and having heard the evidence at this hearing, this Court has grown very familiar with the causes of action in this adversary proceeding and many of the alleged facts. Although no evidence was presented as to the lack of availability of the Delaware court for moving the case to trial or resolving discovery disputes, this Court is familiar with such practices and has in place scheduling conference procedures and orders, pretrial conference orders and other procedures necessary to accomplish these goals. No evidence was presented that the Delaware court has any familiarity with the progress of and issues raised in the action, and this Court assumes that there has been no reason or opportunity for that court to do so thus far. Based on the evidence presented, however, the Delaware district court and the Delaware bankruptcy court are significantly less familiar than this Court with the facts of this case and the progress of this proceeding.

### (d) Ability to receive a fair trial

This fourth factor might be crucial if either court had a predisposition to rule in favor of one party or another or if there was concern about getting an impartial jury. Counsel for neither party raised this issue.[63] Further, no evidence was presented indicating that the Delaware court or a Delaware jury would be more impartial in trying the action than an Alabama court and an Alabama jury. Therefore, the Court concludes that this factor does not weigh in favor or against transfer of venue and that the parties are capable of receiving a fair trial in either court.

### (e) The state's interest in having local controversies decided within its borders, by those familiar with its laws

The Supreme Court long ago recognized that courts generally prefer to decide matters of local interest. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1946) ("There is a local interest in having localized controversies decided at home."). Plaintiff's counsel notes that the Alabama Supreme Court in an unrelated matter stated that "BE & K employs Alabama citizens and pays taxes in this state; therefore, Alabama has a compelling interest in the outcome of this litigation." *Ex parte United Brotherhood of Carpenters*, 688 So.2d 246, 249 (Ala. 1997). In that action however, BE & K chose Alabama as its forum to litigate a cause of action arising outside Alabama. While these facts may be relevant to the issue of whether Alabama is a more suitable forum than Tennessee, this Court must only consider venue between Delaware and Alabama. Considering that this case does not involve a cause of action that arose in Alabama or Delaware, but in Tennessee, this factor is not relevant in the matter before this Court.

### (f) Enforceability of any judgment rendered

In a matter such as this one, the location of the litigation will not prejudice the enforcement of any judgment thereof. Therefore, this factor is not relevant to the Court's decision.

### (g) The Plaintiff's Original Choice of Forum

In *Bruno's*, this Court noted that "where the venue of a bankruptcy case is proper, then 'a debtor's /plaintiff's choice of forum is to be accorded substantial weight and deference.'" *Bruno's*, 227 B.R. at 328 (citing *In re PWS Holding Corp.*, Case Nos. 98–212–SLR through 98–223–SLR (Bankr.Del. April 28, 1998)); *see also In re Steeley*, 243 B.R. 421, 441 (Bankr.N.D.Ala.1999). As the Plaintiff correctly points out, the debtor (Beloit)

---

**63.** This Court understands that even if one party felt that an unfair trial was a possibility, it would be difficult to raise this issue and argue it without offending either this Court or the proposed transferee court.

has not joined in this motion. By placing this factor last under the interest of justice analysis, this Court believes that this factor determines the outcome under this prong: if the movant has not proved by a preponderance of the evidence that the preceding factors weigh in favor of the transfer, then plaintiff's choice of forum remains the proper venue. Thus, no change of venue is appropriate in this matter because BE & K has not convinced this Court under any of the other factors that this case should be transferred.

■ This Court finds that BE & K has only one factor in his favor of the four relevant factors at issue in the interest of justice prong: the presumption in favor of the home court. But this factor and presumption are rebutted and defeated when all of the other factors are weighed and in light of the fact that the home court presumption carries less weight when the debtor has not joined in the motion.[64] The Court concludes that BE & K has failed to meet their burden of proof under the interest of justice prong of § 1412 for transferring venue of the adversary proceeding to the Delaware court. The evidence in the record does not support a finding that transfer is warranted under any of the applicable factors constituting the interest of justice. The table on the following page provides a summary of these factors and those findings of fact relevant to each factor as previously discussed.

### INTEREST OF JUSTICE

| Factor | Relevant Facts |
| --- | --- |
| (a) Economics of estate administration | (1) No evidence of adverse or detrimental effect on the estate of liquidating this particular cause of action in Alabama;<br>(2) No evidence of increased potential cost to Beloit's estate for Beloit's employees/officers to litigate in Alabama;<br>(3) Added expense to bankruptcy estate for Delaware attorneys to become familiar with the case. |
| (b) Presumption in favor of the home court | The presumption is in favor of the Delaware court but, in this case, valued less due to the debtor not joining in the motion to transfer to the home court. |
| (c) Judicial efficiency | (1) This Court is more familiar with the substantive issues;<br>(2) This Court is available and able to resolve discovery disputes and move the proceeding toward trial;<br>(3) No evidence offered regarding Delaware court's trial availability. |
| (d) Ability to receive a fair trial | Not an issue in this case. |
| (e) The state's interest in having local controversies decided within its borders, by those familiar with its laws | Not an issue in this case. |
| (f) Enforceability of any judgment rendered | Not an issue in this case. |

**64.** *See supra* discussion section (II)(E)(2)(b).

(g) Plaintiffs' choice of forum

(1) BE & K has not convinced this Court that transfer is necessary;
(2) Plaintiffs' original action was filed in Alabama.

---

### (3) Analysis Under the "Convenience of the Parties" Prong

Under the alternative prong for proving change of venue, convenience of the parties, the Court will analyze the facts presented by the parties in relation to the following factors:

### (a) Location of Plaintiff and Defendant

Location of the plaintiff and defendant refers to the physical location of the parties, rather than their state of incorporation.[65] The facts relevant to this factor reflect that BE & K's principal place of business is Birmingham, Alabama. Beloit's principal place of business is in Deerfield, Illinois, and not in Delaware, and the Plaintiff is a resident of Tennessee. Therefore, since one party is located in Alabama and no party is located in Delaware, Alabama is the more appropriate venue when considering the location of all of the parties to this adversary proceeding.

### (b) Ease of access to necessary proof

The evidence shows that most of the potential witnesses in this adversary proceeding will not reside in Alabama or Delaware. However, most of the material witnesses and documents produced prepetition are located in Birmingham, Alabama, or within a three hour drive. The testimony concerning the potential witnesses reveals no witnesses located in Delaware. Further, any additional documents to be produced are likely to be located in Alabama or Tennessee, not Delaware. Thus, none of the material or necessary proof for

this action appears to be located in Delaware.

### (c) Convenience of witnesses

As Mr. Alspaugh explained, the Plaintiff's witnesses will incur travel, lodging, and food expenses if the proceeding is transferred to Delaware. Although some will incur these type expenses whether the case is in Alabama or Delaware, Alabama is closer than Delaware by several hundred miles. In addition to these concerns, the Court also notes that witnesses traveling to Delaware face the possibility of spending more time away from their homes, families, and jobs than if the witnesses traveled to Alabama. These considerations are also applicable to the BE & K witnesses who reside in Alabama.[66] The Court received no evidence that any witness resides in Delaware. For those witnesses who reside outside of Alabama, Tennessee, and Delaware, this Court finds that any inconvenience associated with bringing witnesses to Birmingham is no greater than any inconvenience associated with traveling to Delaware. Thus, while most BE & K's witnesses are inconvenienced regardless of the venue, Alabama is clearly a better venue than Delaware to the Plaintiff's witnesses and at least one BE & K witness. Accordingly, the facts relevant to this factor weigh against transfer of the adversary proceeding.

### (d) Availability of subpoena power for unwilling witnesses

From the testimony presented, it does not appear that BE & K will have many witnesses from Alabama. As to any wit-

---

65. *See supra* note 48.

66. As Mr. Thagard testified, "most" BE & K's representatives will be from outside Alabama. However, "most" is not "all" and the Court

believes that it is appropriate to infer from Mr. Thagard's testimony that there will be at least one BE & K witness from Alabama.

ness who does reside in Alabama, that witness would not be subject to the subpoena power of the Delaware court as they would be for this Court. At the very least, considering the likelihood that only a few witnesses in this matter may be from Alabama, this factor appears to only slightly favor the Plaintiff in deciding whether to transfer this proceeding.

### (e) Expenses related to obtaining witnesses

The Court received no evidence that any witness resides in Delaware. There was testimony from BE & K that one potential witness is located in New Jersey, and probably at least one from Birmingham. It appears that a significant number of witnesses may be located in Counce, Tennessee. While these persons are not located in Alabama, the expenses associated with driving approximately three hours are certainly less than flying to Delaware. Other than the witness in New Jersey and the witness or witnesses from Birmingham and those persons located in Tennessee, it appears that most of the witnesses required to testify would have to travel by air regardless of the venue. Accordingly, while no evidence was presented to the Court as to the difference in cost of a plane ticket to Delaware compared to a plane ticket to Birmingham, this Court believes that any such difference would be negligible.

■ In conclusion, none of the parties are physically located in Delaware. Much of the proof necessary for trial is available in Birmingham and many of the witnesses, while not located in Birmingham, are just a three hour drive away. Since none of the potential witnesses are located in Delaware, there will be costs associated in producing live witnesses in either Birmingham or Delaware. These costs, however, are dramatically reduced for the Plaintiff, and possibly for BE & K as well, if the adversary proceeding is litigated in Birmingham. Thus, BE & K has failed to prove by a preponderance of the evidence that this adversary proceeding should be transferred to Delaware for the convenience of the parties.

The following table provides a summary of these factors and those findings of fact relevant to each factor.

### CONVENIENCE OF THE PARTIES

| Factor | Relevant Facts |
| --- | --- |
| (a) Location of the plaintiffs and defendants | (1) Beloit is incorporated in Delaware, but its principal place of business is in Deerfield, Illinois, and it has no offices in Delaware; (2) BE & K is a Delaware corporation, its principal offices are in Birmingham, Alabama, and it has no offices in Delaware; (3) The Plaintiff is a resident of Tennessee. |
| (b) Ease of access to necessary proof | (1) Many of the parties' potential witnesses to be deposed and to testify are located in within a three hour drive from Birmingham, Alabama; (2) Many of the documents are available in Birmingham; (3) No witnesses and no documents are located in Delaware. |
| (c) Convenience of witnesses | (1) Costs of travel, lodging, and food for most witnesses would be greater to travel to Delaware; |

(2) Inconvenience to witnesses because of the time change, additional days missed from work, and the likelihood of additional overnight stays if the case is transferred to Delaware.

(d) Availability of subpoena power for un- Not an issue in this case.
willing witnesses

(e) Expense related to obtaining witnesses None of the parties' potential witnesses are located in Delaware; although the proximity of most witnesses favors Birmingham.

---

### (f) Conclusion

Having weighed all of the factors, the Court finds that except for the judicially created presumption in favor of the home court for a debtor (a non-moving defendant in this case), there are no facts or circumstances in favor of transferring this proceeding either in the interest of justice or the convenience of the parties. To the contrary, there is substantial and convincing evidence to not only rebut the presumption but to dictate that the transfer request be denied. In fact, the lack of any evidence demonstrating economic hardship, adverse impact, or detrimental effect on the economic administration of the bankruptcy estate is a significant and overwhelming factor. In considering and analyzing this factor in conjunction with the others discussed, the Court concludes that BE & K has failed to meet its burden of proof under the interest of justice prong of § 1412 for transferring venue of the adversary proceeding to the Delaware district court. Further, BE & K has failed to prove by a preponderance of the evidence that this adversary proceeding should be transferred to Delaware for the convenience of the parties. Accordingly, it is hereby

**ORDERED, ADJUDGED, AND DE-CREED** that the relief sought by BE & K is **DENIED** with respect to transfer of this adversary proceeding to the Delaware

bankruptcy court where Beloit Corporation's Chapter 11 case is pending.