**In re ASBESTOS LITIGATION.**

**Civ. A. Nos. 2:01–1055 to 2:01–1074, 2:01–1085 to 2:01–1224.**

United States District Court, S.D. West Virginia, Charleston Division.

Dec. 7, 2001.

Ronald L. Motley, Esquire, Ness, Motley, Loadholt, Richardson & Poole, P.A., Mt. Pleasant, SC, Scott S. Segal, Esquire, Segal Law Firm, J. David Cecil, Esquire, James Humphreys & Associates, L.C., Charleston, WV, for Plaintiffs.

J. Tyler Dinsmore, Esquire, Flaherty, Sensabaugh & Bonasso, Charleston, WV, Steven R. Williams, Esquire, McGuire Woods, LLP, Richmond, VA, David Bernick, Esquire, Kirkland & Ellis, Chicago, IL, John R. McGhee, Jr., Esquire, Kay, Casto & Chaney, Charleston, WV, for Removing Defendants.

### MEMORANDUM OPINION AND REMAND ORDER

HADEN, Chief Judge.

Pending are the motions of Plaintiffs in these civil actions 1) to remand them to the Circuit Court of Kanawha County, West Virginia, 2) to abstain from hearing these claims, or 3) to enjoin their transfer to the District Court for the District of Delaware (Delaware court). For reasons discussed below, the Court **GRANTS** the motion for remand. The remaining motions are **DENIED** as moot.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 2001 pursuant to 28 U.S.C. § 1452(a) and *Bankruptcy Rule*

9027(a), DaimlerChrysler Corporation, Ford Motor Company, and General Motors Corporation (the Removing Defendants or Automakers) removed civil actions numbered –1055 to –1074. The same day they moved the Delaware court to transfer to that court "all claims and causes of action against the Automobile Manufacturers [Automakers] in state or federal court alleging injuries due to friction products, including brakes and other automotive parts[,]" pursuant to 28 U.S.C. § 157(b)(5). On November 26, 2001 the remaining civil actions numbered –1085 to 1224 were removed. The Automakers contend the 160 actions removed here are related to the bankruptcy of Federal–Mogul Global, Inc. (Federal–Mogul).[1]

Plaintiffs immediately moved for an emergency hearing on motions to remand, abstain, or enjoin transfer of the cases. Following an expedited briefing schedule, the Court heard extensive argument on December 4, 2001. The parties have supplemented their initial briefing. These matters are now ripe for disposition.

## II. DISCUSSION

### A. *Subject Matter Jurisdiction*

#### 1. Jurisdiction of actions "related to" bankruptcy

■ General principles of removal and remand apply to bankruptcy, as well as non-bankruptcy, actions. *See Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 128, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Under the general removal statute, defendants may remove any case of

which the district courts have original jurisdiction.[2] 28 U.S.C. § 1441(a). Removal statutes must be construed strictly against removal. *See Mulcahey v. Columbia Organic Chem. Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994). The party seeking to remove a case to federal court has the burden of establishing federal jurisdiction. *See id.* If federal jurisdiction is doubtful, a remand is necessary. *See id.*

The Automakers removed the state actions pursuant to 28 U.S.C. § 1452(a), which provides, "A party may remove any claim or cause of action in any civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Under Section 1334, district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to a case under title 11.*" 28 U.S.C. § 1334(b)(emphasis added). All parties agree, if this Court has jurisdiction over these proceedings, it must be based on their relatedness to the Federal–Mogul bankruptcy.

■ Our Court of Appeals has adopted the *Pacor* test for determining the existence of such related-to jurisdiction:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessari-

---

**1.** Federal–Mogul filed a petition for Chapter 11 bankruptcy on October 1, 2001, Bankruptcy Case No. 01–10578, United States Bankruptcy Court for the District of Delaware.

**2.** Under the statute governing removal of claims related to bankruptcy cases, not only defendants may remove, but removal may be

effected by "a party." *See* 28 U.S.C. § 1452(a).

Another relevant difference of bankruptcy removals: because any party may remove, there is no rule of unanimity. *See Creasy v. Coleman Furniture Corp.,* 763 F.2d 656, 660 (4th Cir.1985).

ly be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1002 n. 11 (4th Cir.1986)(quoting *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)); *see also Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (recognizing the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have adopted the *Pacor* test, while the Second and Seventh Circuits have adopted a slight variant, and not choosing one test over the other).

Discussing the *Pacor* test, the Supreme Court said:

We agree with the views expressed by the Court of Appeals for the Third Circuit in [*Pacor*] that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate and that the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate." *We also agree with that court's observation that a bankruptcy court's "related to" jurisdiction cannot be limitless.*

*Celotex,* 514 U.S. at 308, 115 S.Ct. 1493 (citations omitted)(emphasis added).

 *Pacor's* limiting language, · approved by the Supreme Court, clarified

that the related-to jurisdictional test is broad, but

[o]n the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of Section 1471(b).[3] Judicial economy itself does not justify federal jurisdiction. *See generally Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). "Jurisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist." *In re Haug,* 19 B.R. 223, 224–25 (Bankr. D.Ore.1982). *See also In re McConaghy,* 15 B.R. 480, 481 (Bankr.E.D.Va. 1981) (Bankruptcy court lacks jurisdiction to decide disputes in which the estate of the debtor has no interest.)

*Pacor,* 743 F.2d at 994.

*Pacor* presented circumstances not dissimilar to those before the Court today. In *Pacor,* the Higgins (husband and wife) brought a products liability action against Philadelphia Asbestos Co. (trading as Pacor) in state court. Pacor impleaded Johns–Manville Corporation (J–M) as the alleged manufacturer of the asbestos products Pacor distributed. When J–M filed for bankruptcy protection, Pacor removed both the Higgins/Pacor and Pacor/J–M third-party claim. The district court remanded the actions to state court. Pacor appealed. The Third Circuit affirmed the remand, holding the Higgins/Pacor action was not related to the J–M bankruptcy, finding "[a]t best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville." *Id.* at 995.

---

**3.** Former Section 1471(b) of Title 28 was recodified in identical language as present Section 1334(b).

The *Pacor* court suggested the outcome might have been different had there been an "explicit indemnification agreement" between Pacor and J–M or if Pacor had been J–M's "contractual guarantor." *Id.* Relying on this implication of *Pacor*, our Court of Appeals found jurisdiction related to bankruptcy such that the automatic stay applied[4] under the "unusual circumstances" where "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party will in effect be a judgment or finding against the debtor." *A.H. Robins v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986). On this premise, the Fourth Circuit determined that actions against officers or employees entitled to indemnification under the bankrupt employer's insurance, corporate by-laws, and the governing corporate statute were related to the bankruptcy. *Id.* at 1001–02, 1007.

Considering these principles, the Court considers the Automakers' showing on the issue of jurisdiction related to the Federal–Mogul bankruptcy.

## 2. Automakers' Jurisdictional Claims

As an initial matter, the Court notes the Removing Defendants are all solvent, non-debtor defendants, as are all or almost all of the remaining non-removing defendants in these actions,[5] none of whom noticed an appearance at the hearing or otherwise expressed their views on removal. Also, the debtor Federal–Mogul has taken no position on these removals. (Mot. to Transfer ¶ 14.)

### a. Claims against the alleged debtor

■ The Automakers removed these actions alleging that Plaintiffs assert various personal injury claims against Federal–Mogul, "its divisions and/or subsidiaries... and the Removing Defendants[.]" (Jt. Notice of Removal ¶ 1.) Federal–Mogul was not named among the multitudinous defendants in any of these actions. At the hearing on this matter, the Court requested the Automakers provide a list of Defendants satisfying their claim relating these actions to the debtor. The list subsequently produced showed either Abex Corporation (Abex), Wagner Electric Corporation (Wagner), or both named as a defendant in each of these actions and, according to a separate typed and unauthenticated list, each was an entity of Federal–Mogul. In their Motion to Transfer, the Automakers state, "Both Abex and Wagner are now part of the Debtor." (Mot. to Transfer at 17.)

Plaintiffs dispute this claim, citing Federal–Mogul's own Informational Brief, which states that Abex "does not have a corporate relationship with any of the Debtors." (Pls.' Supp. Briefing, Objection of the Official Committee of Asbestos Claimants to [Automakers'] Mot. to Transfer at 12.) The actual Federal–Mogul /Abex connection is delineated thus:

(a) Abex sold its friction products assets to Moog Automotive, Inc. (Moog), a subsidiary of Cooper Industries, Inc. (Cooper); (b) Cooper assumed liability under certain circumstances for asbestos personal injury claims alleging exposure to certain Abex friction materials; and (c)

---

4. Section 362(a)(1), Title 11, imposes an automatic stay of any proceeding "commenced or [that] could have been commenced against the debtor" at the time of filing the Chapter 11 proceeding, while subsection (a)(3) provides the same protection from suits involving possession or custody of property of the debtor. 11 U.S.C. § 362(a)(1); (a)(3).

5. Non-removing Defendants number more than 150.

a Federal–Mogul subsidiary purchased Moog's stock from Cooper and assumed Cooper's indemnity obligations for claims brought after 1998.

There is no showing the indemnity obligations of Federal–Mogul's subsidiary actually have been triggered, nor that any of the Automakers has a substantial claim against Abex within the limited obligation assumed by Federal–Mogul's subsidiary. The ostensible connection purporting to identify Abex with Federal–Mogul is far from convincing.

To the extent the Wagner/Federal–Mogul connection is supported, it also runs through the Moog/Cooper linkage.[6] Given this rickety platform for the Abex– or Wagner-as-debtor claim, the Court is unwilling to rest its jurisdiction on this basis alone. Additionally, as noted above, the vast majority of Defendants in these removed actions are third-party nondebtors, including the Removing Defendants.

### b. Import of indemnification claims

■ The Motion to Transfer filed by the Removing Defendants in the Delaware court claims:

6. The Friction Product Claims have a substantial effect on the Debtor's estate. Their disposition will directly affect the Debtor's rights, property and liabilities. *For example, as a result of such claims, the Automobile Manufacturers will have thousands of claims for indemnification and contribution* [7] *against the Debtor, which will significantly impact the bankruptcy estate.*

(Mot. to Transfer ¶ 6 (emphasis added).)

Of the three Removing Defendants, only DaimlerChrysler actually claims to have indemnity agreements with Federal Mogul. The evidence thereof consists of an affidavit by a former employee who recalls issuing "purchase orders on Chrysler's behalf to Wagner Electric in the late 1960's and in the 1970's for the procurement of automotive brake components, including brake shoes, pads, linings, etc." (Mot. to Transfer, App. Tab 1 ¶¶ 8–10.) The employee avers the purchase orders would "include language incorporating General Terms and Conditions." *Id.* ¶ 6. Nearly illegible purchase orders were attached as examples. The single purchase order addressed to Abex mentions no general terms and conditions. Those addressed to Wagner are filled out on a preprinted form which contains a small print boilerplate reference to general terms and conditions. The terms and conditions actually are found in a massive Chrysler handbook, containing a myriad of terms and conditions including a requirement found under an *Insurance* heading that suppliers must:

defend, indemnify, and protect Purchaser against all claims, liabilities, losses and damages due to injury or death of any person and damage to or loss of any

---

6. The transfer motion notes, "In 1998, Federal Mogul acquired Cooper Automotive Co., and, in doing so, assumed all asbestos-related liability of Cooper and Cooper's two former businesses, Abex and Wagner." (Mot. to Transfer at 17, n. 41 (citing *Asbestos Companies Report Annual Numbers of Pending Claims, New Filings in 2000*, 16 Mealey's Litig. Rep.: Asbestos 19 (May 18, 2001)).)

7. Under West Virginia law, joint tortfeasors are liable for contribution in proportion to their percentage of negligence as determined by a jury. *See Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 602–03, 390 S.E.2d 796, 801–02 (1990). If the debtor is not a named defendant in these actions, however, the Automakers could have no basis for a contribution claim against them. As discussed above, the relation to the debtor of named Defendants Abex and Wagner remains an open factual question.

property out of the improper performance of negligent work under this order or arising out of allegedly defective material or workmanship in the goods and services provided.

(*Id.* Tab. A at 3–72.) [8]

Considering Chrysler drafted the terms, which are extremely wide-ranging and generous to the drafter, which were not bargained for and are not present on the form presented to the suppliers (nor is any reference to them present on the form presented to Abex), the question whether this purported indemnity agreement would be determined to bind the suppliers is open and one not easily resolved. The Court is unwilling again to rest subject matter jurisdiction on this tenuous support.

### c. Conceivability and mass tort claims

In oral argument, the Removing Defendants emphasized "conceivability" as the crucial aspect of the *Pacor* test and proposed a very broad test as applied by the Sixth Circuit in *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir.1996). There, the Sixth Circuit held that even non-contractual claims for implied indemnity or contribution against a debtor supported related-to jurisdiction where the nondebtor defendants had "asserted repeatedly ... they intend to file claims for indemnification and contribution" against the debtor and the contingent claims "unquestionably could ripen into fixed claims." *Id.* at 494. The Sixth Circuit also observed, "A single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor's reorgani-

zation plan as that posed by the thousands of potential indemnification claims at issue here." *Id.* The Automakers ask the Court to recognize these potential claims in a mass tort setting as sufficient basis to note bankruptcy-related jurisdiction.

The Automakers propose our Court of Appeals accepts this potentiality doctrine, quoting *In re Celotex,* 124 F.3d 619, 626 (4th Cir.1997) that the test of related-to jurisdiction does not "require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action" but "[t]he possibility of such alteration or impact is sufficient to confer jurisdiction." The Fourth Circuit, however, did not apply that standard in *Celotex,* but found jurisdiction based on a contractual obligation of indemnity. *See id.* at 627. While the court's general statement might be taken as an approving gloss on "conceivability," its application was limited to actuality.

The actual holding in *Celotex* exemplifies a point the Court finds worth noting: "common sense cautions against an open-ended interpretation of the 'related to' statutory language 'in a universe where everything is related to everything else.'" *Matter of FedPak Systems, Inc.,* 80 F.3d 207, 214 (7th Cir.1996) (quoting G. Dunne, *The Bottomless Pit of Bankruptcy Jurisdiction,* 112 Banking L.J. 957 (Nov–Dec. 1995)). The Automakers' claim, at root, is that "the claims against the automobile manufacturers are related to Federal–Mogul's bankruptcy proceedings because they 'arose from business dealings' with the debtor and, moreover, are 'derivative' in nature in that they are based on the same products that are the subject of the claims asserted against the debtor." [9]

---

8. At oral argument Plaintiffs represented the Automakers have never taken action to enforce this indemnity provision, a proposition the Removing Defendants did not dispute.

9. For this proposition, the Removing Defendants cite *Caperton v. A.T. Massey Coal Co.,* 251 B.R. 322, 325–26 (S.D.W.Va.2000), possibly unaware that the ultimate disposition of that action, following the Bankruptcy Court's

(Mem. in Resp. to Pls.' Mot. to Remand or Abstain at 15–16.) Using this wide broom, the Automakers would sweep every "friction products" claim to the Delaware court, including Plaintiffs' completely non-derivative claims that the Automakers are subject to independent liability for failure to warn of the dangers of their products, whether or not those claims involve a Federal–Mogul product.

The law in this circuit does not support the Removing Defendants' arguments for jurisdiction, based on the incomplete and indeterminate factual showing presently before the Court.[10] Accordingly, the Court **FINDS** and **CONCLUDES** subject matter jurisdiction over these actions is lacking and they must be **REMANDED** to the Circuit Court of Kanawha County.

Alternatively, however, were the Court found to possess subject matter jurisdiction, nonetheless it would remand on equitable bases, for the reasons discussed below.

### B. Equitable Remand Considerations

Title 28, Section 1452, governing removal of claims related to bankruptcy cases, provides:

> (b) *The court to which such claim or cause of action is removed* may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of the title

or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(b) (emphasis added). Because these actions were removed here, it is without doubt this Court may exercise the statutory authority to remand.

■ A noted commentator provides an apparently exhaustive list of factors for a court to apply in determining whether to remand for justice, comity, or equity. The Court should consider:

> whether remand would prevent duplication or uneconomical use of judicial resources; the effect of the remand on the administration of the bankruptcy estate; whether the case involves questions of state law better addressed by a state court; comity; judicial economy; prejudice to involuntarily removed parties; the effect of bifurcating the action, including whether remand will increase or decrease possibility of inconsistent results; the predominance of state law issues and non-debtor parties; and the expertise of the court in which the action originated.

16 James Wm. Moore et al., Moore's Federal Practice § 107.15[8][e] (3d ed.2001).

At the outset, the Court notes each side questions the "forum shopping" of the other. Forum shopping, however, is merely venue selection with allegedly questionable motive. Plaintiffs always have initial choice of forum, while defendants may remove, when allowed by law. In this action, Plaintiffs and the Removing Defendants have put forward reasons in favor of their preferred forum, state or federal, and

---

determination of the ownership of Plaintiff's claims, was remand to state court, pursuant to 28 U.S.C. § 1334(c)(2). *See Caperton v. A.T. Massey Coal Co.*, 270 B.R. 654 (S.D.W.Va.2001).

**10.** "In all events, a jurisdictional inquiry is not the appropriate stage of litigation to re-

solve these various uncertain questions of . . . fact. . . . Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir.1999)

the Court considers these reasons not as examples of bad motive or gaming the system, but to weigh the equities, as they appear to this judge.

█ As the Plaintiffs state their view, these 160 civil action involve thousands of plaintiffs and some 150 defendants, apart from the Automakers. With the purported exception of Abex and Wagner, all these parties are non-debtors and total strangers to the bankruptcy action. The plaintiffs have procedural and substantive rights to have their claims resolved in a timely fashion. They chose the state forum and have been pursuing their claims diligently there. During the hearing, Plaintiffs reported that the state Mass Litigation Panel has set a February 2002 date for pretrial proceedings and a June 2002 date for commencing trials of certain representative actions. Absent the putative bankruptcy-related claims, no federal issues obtain and only state law applies.

The Automakers' proposal, set out in their transfer motion and acceded to at oral argument, is to transfer these actions to Delaware where they propose a *Daubert*[11] hearing on the issue of whether exposure to brake dust during brake maintenance causes illness. Resolution of this issue in their favor will support dismissal of all pending actions on summary judgment, an economical use of judicial resources, they argue, which avoids inconsistent outcomes and clears clogged dockets. Further, they say, there are no complex state-law issues, and thus, federal courts possess the expertise to adjudicate these tort cases.

Considering the parties' divergent accounts and perspectives, the Court **FINDS** and **CONCLUDES** the balance of equities

tips in favor of remand. A mechanism is already in place to try these actions in state court, including the Mass Litigation Panel and Procedure, implemented by the Supreme Court of Appeals of West Virginia. *See West Virginia Trial Court Rule* 26.01. Although further refined by the 1999 implementation of this rule, the mass litigation procedure has been employed in the West Virginia courts on past occasions. Both the plaintiffs' bar and defense counsel involved in these actions are conversant with the process and procedures. As noted, that process was underway with regard to the 160 actions removed here. This Court believes federal courts ought not to intrude on state court proceedings, except where law and equity require it. The limited jurisdiction of Article III courts supports this view, as does the general removal rule: where federal jurisdiction is doubtful, remand is necessary. *Mulcahey*, 29 F.3d at 151.

This Court has no reason to doubt or question the capacity of the West Virginia court system to handle these actions, much less to apply state law, an area in which it is the undisputed expert. Application of *Daubert* and related principles to scientific evidentiary questions and proof problems is not the particular province of any system, federal or state. While the Automakers are correct that, if all friction products actions were removed to one court, and if that court were to determine their position on brake dust asbestos-related damage is correct, and if summary judgment were to be granted on all actions, the process would be efficient and the opportunity for inconsistent results would be lessened. This desirable result, however, requires several steps of speculative prognostication. If the predictions are even slightly

---

**11.** *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

off, unintended results from improvident removal could be severe. Inefficiencies and delay for these thousands of Plaintiffs, as well as the non-removing Defendants, and state and federal judicial systems could be extreme.

Prejudice to these involuntarily removed parties simply cannot be determined at this time, but the potential is great. What might be categorized as "temporal prejudice" is more likely. That is, these state tort actions have a schedule in place for trials to begin the next calendar year, following pretrial determinations in the next few months. The schedule of the Delaware court must be more uncertain, for initially the matter of transfer of tens of thousands of cases similar to these must be taken up before pretrial matters can be scheduled. Where the Plaintiffs will journey, state or federal courts, Delaware or West Virginia, and when pretrial issues, including *Daubert* will be considered, remain large and open questions. It would be presumptuous of this Court to speculate what effect remand of these 160 cases might have on administration of the bankruptcy estate. The jurisdictional analysis above suggests the impact on the Delaware case, comparatively, would be minimal.

For all these reasons, economical use of judicial resources appears to be a neutral factor, although the efficiency of continuing an ongoing and well understood process weighs in Plaintiffs' favor. As previously recognized, questions of comity, accession to the state courts' knowledge of state law, prejudice to involuntarily removed parties, predominance of state law issues and non-debtor parties, and the expertise of the court in which the action originated all favor the Plaintiffs' argument for remand.

## III. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiffs' motion and, pursuant to 28 U.S.C. § 1452(b), **REMANDS** these actions to the Circuit Court of Kanawha County, West Virginia for all further proceedings.

The Clerk is directed to provide a certified copy of this Memorandum Opinion and Remand Order to the Circuit Clerk of Kanawha County. The Clerk is directed also to send a copy to counsel for Plaintiffs and the Removing Defendants by facsimile transmission, to all counsel of record by first class mail, and to publish it on the Court's website at http://www.wvsd.uscourts.gov.