Marlene HOPKINS, individually, as Wrongful Death Heir, and as Successor-in-Interest to Norman Hopkins, Jr., Deceased; and Michelle Hopkins, and Michael Hopkins, as Legal Heirs of Norman Hopkins, Deceased, the

Flintkote Company, the Official Committee of the Asbestos Personal Injury Claimants, and James J. McMonagle as the Legal Representative for Future Asbestos Personal Injury Claimants, Plaintiffs,

v.

PLANT INSULATION COMPANY; Uniroyal Holding, Inc.; Imperial Tobacco Canada Limited; Sullivan & Cromwell LLP; and Does 1 through 100, Defendants.

Civ.A. No. 06–298–JJF.

United States District Court, D. Delaware.

June 13, 2006.

Stephen M. Miller, Brett D. Fallon, Morris, James, Hitchens & Williams LLP, Wilmington, DE, of Counsel: L. Joseph Loveland; James A. Pardo, Jr., Mark M.

Maloney, King & Spalding LLP, Atlanta, GA, for Imperial Tobacco Canada Limited.

Laura Davis Jones, James E. O'Neill, Pachulski Stand Ziehl Young Jones & Weintraub LLP, Wilmington, DE, of Counsel: Stephen M. Snyder, James L. Miller, Snyder Miller & Orton LLP, Eliot S. Jubelirer, Jean L. Bertrand, Morgenstein & Jubelirer, San Francisco, CA, Kelly C. Wooster, Kelly C. Wooster, Copperopolis, CA, The Law Office of Alan Pedlar, a Professional Corporation, Aptos, CA, for Plaintiffs.

## *MEMORANDUM OPINION*

FARNAN, District Judge.

Pending before the Court is the Emergency Petition Of Imperial Tobacco Canada Limited For An Order Of Transfer Pursuant To 28 U.S.C. § 157(B)(5) (D.I. 1). For the reasons discussed, the Court will exercise its discretion to abstain from exercising jurisdiction over the California Action and deny the Petition requesting transfer under Section 157(b)(5).

## BACKGROUND

### I. Procedural Background

On May 1, 2004, The Flintkote Company ("Flintkote") filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Flintkote's bankruptcy case is currently proceeding in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") before the Honorable Judith K. Fitzgerald. During the course of Flintkote's bankruptcy proceedings, the Bankruptcy Court appointed an Official Asbestos Claimants'

Committee (the "ACC") and a Future Claims Representative (the "FCR").

Nearly two years later, Flintkote, together with the ACC, the FCR, and Marlene Hopkins, Michelle Hopkins and Michael Hopkins [1] (the "Hopkins Family"), filed a complaint in the Superior Court of California against Imperial Tobacco Canada Limited ("ITCAN"), Plant Insulation Company ("Plant"), Uniroyal Holding, Inc. ("Uniroyal"), Sullivan & Cromwell LLP ("S & C") and Does 1 through 100 (the "California Action"). Through the California Action, Flintkote and the other plaintiffs seek to demonstrate that ITCAN has alter-ego liability for any obligations of Flintkote to asbestos claimants, on the grounds that ITCAN, as the former parent of Flintkote, stripped Flintkote of $525,000,000, leaving Flintkote unable to pay billions of dollars owed to asbestos claimants.[2]

Shortly after the filing of the California State Action, the Bankruptcy Court approved Flintkote's retention of San Francisco area counsel to litigate the state action, and a joint prosecution agreement by which the state action would be prosecuted by Flintkote and the legal representative of future and current asbestos claimants for the benefit of Flintkote.

On May 5, 2006, ITCAN removed the California Action to the United States District Court for the Northern District of California (the "California District Court"), and filed a motion to stay and transfer the action to this Court. In response, Flintkote and the other plaintiffs have filed a motion to remand the case from the Cali-

---

1. The Hopkins Family are the heirs of Norman Hopkins, Jr. who died of mesothelioma.

2. To allow the California Action to proceed, the Bankruptcy Court approved the "Agreement Providing For Joint Pursuant Of Alter Ego Remedies" (the "Alter Ego Agreement")

which modified the automatic stay to allow the Hopkins family to pursue alter ego remedies against ITCAN as provided in the Alter Ego Agreement between the Flintkote Company and the Hopkins Family.

fornia District Court back to the California Superior Court.

Simultaneously with its filings in the California District Court, ITCAN also filed the instant Emergency Petition for transfer pursuant to 28 U.S.C. § 157(b)(5). Briefing has been completed on the Petition, and therefore, the matter is ripe for the Court's review.

## II. Factual Background

By way of brief factual background, the Court notes that the Complaint in the California Action alleges 16 causes of action based on state law theories of recovery. The first seven claims alleged in the Complaint are asbestos wrongful death claims based on negligence, products liability, loss of consortium, and contractor liability, asserted by the Hopkins Family against Plant, Uniroyal and ITCAN as the alter-ego of Flintkote. These claims are based on the death of Norman Hopkins, Jr. on September 27, 2005, due to mesothelioma allegedly contracted by exposure to asbestos-containing products manufactured and/or sold by Plant, Uniroyal and Flintkote. The Hopkins Family are residents of California. Flintkote is a Delaware corporation headquartered in San Francisco, and Plant is a California Corporation. ITCAN is a Canadian corporation alleged to be a manufacturer of cigarettes and other tobacco products.

Of the remaining nine claims, seven are asserted by Flintkote, in its own right or through the assertion of the rights of other creditors, against ITCAN for a declaration of alter-ego liability, receiving illegal dividends, recovery of fraudulent transfers, breach of fiduciary duty, constructive trust, restitution, and declaratory relief. One claim is also asserted by Flintkote against S & C for breach of duty and negligence as a result of S & C's representation of Flintkote in the late 1980s.

## DISCUSSION

## I. The Parties' Contentions

By their Motion, ITCAN requests the Court to transfer the California Action to this Court. ITCAN contends that Delaware is the appropriate venue for the California Action, because the California Action is an integral part of Flintkote's bankruptcy proceedings and its reorganization plans. Specifically, ITCAN contends that Flintkote ultimately intends to transfer the California Action to an asbestos personal injury trust created under Section 524(g) of the Bankruptcy Code pursuant to a confirmed plan of reorganization. ITCAN points out that the creation of such a trust and any possible settlement of the California Action will both require the approval of the Bankruptcy Court, and therefore, resolution of the entire action in this Court would promote judicial economy and prevent the waste of both the parties' and the respective courts' resources. ITCAN also contends that the substantive claims of the California Action are better suited for resolution in Delaware, because (1) they are interwoven with the dividend recovery claims which impact Flintkote's bankruptcy estate, and (2) they seek to disregard the corporate form of Flintkote, a Delaware corporation.

In response, Flintkote contends that a transfer of the California Action to Delaware contravenes the purpose of Section 157(b)(5), which is to assist a debtor in managing and centralizing personal injury tort claims brought against the debtor. Because Flintkote is the debtor in this case, Flintkote contends that its choice of forum should be respected, and Section 157(b)(5), which is supposed to favor the debtor, should not be used against it to effectuate a transfer which it opposes.

Flintkote also contends that California is the appropriate forum to try the California Action, because the California Action (1) advances state law claims, (2) is brought by California citizens and a corporation headquartered in California against two corporations headquartered in California, and (3) the Bankruptcy Court has taken a number of measures aimed at allowing the case to proceed in California, specifically, authorizing Flintkote's retention of a California law firm and authorizing the ACC and FCR to appear in the California Action.

In the alternative, Flintkote contends that the Court should exercise its discretion and abstain from the transfer decision. Flintkote contends that abstention is the threshold analysis in a Section 157(b)(5) transfer motion, and that if abstention is appropriate, the Court will not need to make the other venue determinations required by Section 157(b)(5).

## II. Whether The Court Should Transfer This Action From The California District Court To This Court Pursuant To 28 U.S.C. § 157(b)(5)

■ In pertinent part, Section 157(b)(5) provides:

The district court shall order that personal injury tort and wrongful death claims shall be tried in the district in which the bankruptcy case is pending or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Because the Flintkote bankruptcy case is pending in the United States Bankruptcy Court for the District of Delaware, this Court has the sole authority to determine the appropriate venue for the California Action which alleges personal injury tort and wrongful death claims against, among others, the non-debtor ITCAN. *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986) (recognizing that Section 157(b) expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts). In making a determination as to venue, the Court has three options. The Court may try the case in this jurisdiction, transfer the case to the district in which the claim arose, or abstain from adjudicating the issue. *See In re Pan American Corp.*, 950 F.2d 839, 844 (2d Cir.1991) (recognizing that, despite the use of the mandatory language "shall order" in § 157(b)(5), that section "has consistently been construed to leave personal injury cases where they are pending" and allow the district court to abstain from exercising jurisdiction).

### A. Whether The Court Has Subject Matter Jurisdiction Over This Action Under Section 1334(b)

■ As a threshold matter, the Court must begin its analysis with a determination of whether the Court has subject matter jurisdiction over the California Action.[3] *See In re Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir.1996). By its Petition, ITCAN contends that the Court has subject matter jurisdiction over the California Ac-

---

3. The parties debate whether the Court should conduct the abstention analysis before the subject matter jurisdiction analysis. In reviewing the applicable case law, the Court notes that several courts proceed to abstention without considering subject matter jurisdiction. However, the Court is persuaded that subject matter jurisdiction is the threshold question that must precede any analysis of abstention. *See generally*, Thomas B. Bennett, *Removal, Remand, and Abstention Related To Bankruptcies: Yet Another Litigation Quagmire!*, 27 Cumb. L.Rev. 1037 (1997).

tion under the "related to" prong of 28 U.S.C. § 1334(b).[4]

Flintkote concedes that its claims against ITCAN, including its causes of action under Section 544 of the Bankruptcy Code, fall within the Court's "related to" jurisdiction. (D.I. 17 at 33) ("Flintkote agrees that *its* claims against [ITCAN], are 'related to' its bankruptcy case under the broad definition afforded to that term under applicable law.") (emphasis in original). However, Flintkote disagrees with ITCAN's assertion that the Hopkins Family claims against ITCAN are "related to" the Flintkote Chapter 11 proceeding.[5] Analogizing ITCAN to an insurer with adequate policy limits who denies coverage, Flintkote contends that resolution of the Hopkins Family claims will have no direct effect on Flintkote's Chapter 11 case, regardless of whether the Hopkins Family wins or loses. If the Hopkins Family loses, there will be no impact on the estate. If the Hopkins Family wins, then ITCAN will pay the judgment like an insurer would. According to Flintkote any other impact on the estate will only come by virtue of separate independent legal proceedings like a settlement agreement between Flintkote and ITCAN or additional lawsuits brought by the asbestos claimants against ITCAN in the tort system, and such independent proceedings do not fall within "related to" jurisdiction as that has been defined by the Third Circuit in *Pacor* and its progeny.

In response, ITCAN contends that the Hopkins Family claims for alter-ego liability against ITCAN "are in fact personal injury tort claims against Flintkote," because alter-ego liability is based on the existence of an underlying claim, and the Hopkins Family seeks a determination that Flintkote's actions caused the wrongful death of Norman Hopkins. ITCAN also contends that the asbestos claims are interwoven with Flintkote's other claims against ITCAN, and therefore, the Court has "related to" subject matter jurisdiction over all the claims asserted in the California Action.

■■■ Though not limitless, the concept of "related to" jurisdiction has been broadly defined to encompass any civil proceeding whose outcome "could conceivably have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards*, 514 U.S. 300, 306, 308 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)). An action is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* However the question of "whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding, inquires whether the allegedly related lawsuit would affect the bankruptcy without the intervention of yet another lawsuit." *In re Combustion Engineering,*

---

4. In pertinent part, Section 1334(b) provides: Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in *or related to cases under title 11*.
28 U.S.C. § 1334(b) (emphasis added).

5. In making this assertion, Flintkote states that ITCAN's Section 157(b)(5) motion is not addressed to Flintkote's claims but to the claims of the Hopkins Family against Imperial Tobacco. Flintkote's understanding of IT-CAN's motion is incorrect. ITCAN seeks the transfer of the entire California Action, and not merely the Hopkins Family claims. (D.I. 25 at 37).

*Inc.,* 391 F.3d 190, 227 (3d Cir.2004). Moreover, the proceeding need not be against the debtor or the debtor's property to invoke "related to" jurisdiction under Section 1334(b), and "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of Section [1334]." *Pacor,* 743 F.2d at 994. Rather, there must be some nexus between the "related" civil proceeding and the Chapter 11 case. *Id.*

Reviewing the circumstances in this case in light of the applicable law, the Court concludes that the claims asserted by both Flintkote and the Hopkins Family in the California Action are "related to" Flintkote's bankruptcy proceedings for the purposes of establishing subject matter jurisdiction under Section 1334(b). As Flintkote has acknowledged, the asbestos claims asserted in the California Action are factually interwoven with the dividend recovery and malpractice claims asserted by Flintkote against ITCAN and S & C, respectively. In addition, Flintkote has acknowledged that the California Action "represents potentially the largest group of assets" of its bankruptcy estate, and it is clear that the alter-ego claims asserted by both Flintkote and the Hopkins Family implicate Flintkote's underlying liability. *See Celotex,* 514 U.S. at 308 n. 5, 115 S.Ct. 1493 ("Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate ...."); *The Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 407 (S.D.N.Y.1991) (concluding that outcome of the action could conceivably have an effect on the bankrupt estate "because the claims in this action constitute potential assets of the estate"). Accordingly, the Court concludes that "related to" jurisdiction exists with regard to the claims asserted in the California Ac-

tion by both Flintkote and the Hopkins Family for the purposes of invoking a transfer of this action pursuant to Section 157(b)(5).

**B. *Whether This Court Should Abstain From Exercising Jurisdiction As Provided For In Section 1334(c)***

▮▮▮▮ Having concluded that jurisdiction exists under Section 1334(b), and thus, Section 157(b)(5) is properly invoked, the Court must next consider whether abstention is appropriate under Section 1334(c). Section 1334(c) provides for two types of abstention, discretionary abstention and mandatory abstention. Mandatory abstention pursuant to Section 1334(c)(2) does not apply to the liquidation of personal injury tort or wrongful death cases, and therefore, the Court concludes that mandatory abstention cannot be applied here. *See* 28 U.S.C. 157(b)(4); *Dow Corning Corp.,* 86 F.3d at 497. However, in its discretion, the Court may abstain from hearing a case over which it has jurisdiction pursuant to the discretionary abstention principles set forth in Section 1331(c)(1). *Pan Am.,* 950 F.2d at 844; *A.H. Robins,* 788 F.2d at 1010; *Dow Corning,* 86 F.3d at 497; *In re Federal–Mogul,* 282 B.R. 301 (Bankr.D.Del.2002).

▮▮▮▮ In pertinent part, Section 1331(c)(1) provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1331(c)(1). In determining whether abstention is appropriate, courts consider twelve factors:

(1) the effect on the efficient administration of the estate; (2) the extent to

which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties. *In re AstroPower Liquidating Trust,* 335 B.R. 309, 330 (Bankr.D.Del.2005) (quoting *Great Am. Ins. Co. v. Mobile Tool Int'l (In re Mobile Tool Int'l),* 320 B.R. 552, 556–557 (Bankr.D.Del.2005)). Reviewing these factors in light of the circumstances in this case, the Court concludes that the majority of the factors weigh in favor of abstention. The Court's analysis as to each factor follows.

### 1. The efficient administration of the bankruptcy estate

Flintkote is the debtor in this action, and Flintkote has represented that the confirmation of a plan in its bankruptcy is not contingent upon resolution of the California Action. *See* D.I. 20 (Pedlar Decl.) at Exh. 3 ("Debtors' Motion For Order Approving Certain Joint Prosecution Agreements And Annulling The Automatic Stay In Connection With Dividend Recovery Litigation"), p. 5 ¶ 11; D.I. 19 (Gordon Decl.) at ¶ 6 (representing that the California Action is not central to administration

of Flintkote's Chapter 11 estate, the ability of Flintkote to propose a plan of reorganization or the timing or course of which the Chapter 11 case proceeds toward confirmation). Indeed, in moving for withdrawal of the reference, ITCAN acknowledged Flintkote's representation and agreed with it, using it to support its argument in favor of withdrawal. D.I. 20 (Pedlar Decl.) at Exh. 7 ("Imperial Tobacco Canada Limited's Memorandum of Law In Support Of Its Motion To Withdraw The Reference To The Bankruptcy Court With Respect To the Debtors' Joint Prosecution Motion"), p. 18.

■ Using the same arguments it advanced to support subject matter jurisdiction, ITCAN contends that the California Action substantially impacts Flintkote's bankruptcy case. However, the relevant inquiry for abstention is not whether the California Action impacts the bankruptcy proceedings at all, which is essentially the inquiry for establishing "related to" jurisdiction, but rather, whether the California Action will negatively impact the efficient administration of the estate. Moreover, the Court agrees with Flintkote that the primary impact of the California Action on Flintkote's bankruptcy proceeding is the potential to increase the recovery available for present and future asbestos claimants. D.I. 19 (Gordon Decl.) at ¶ 6. However, the Court is not persuaded that this potential impact will impede the administration of the estate, or is an otherwise sufficient impact to justify retention of federal jurisdiction over the California Action. *See Drexel Burnham Lambert Group, Inc.,* 130 B.R. 405, 408 (S.D.N.Y.1991) ("Because every claim of a debtor in possession is an asset of the estate, this is not sufficient to warrant the retention of federal jurisdiction over these claims."). Accordingly, the Court concludes that this factor weighs in favor of abstention.

### 2. The extent to which state law issues predominate over bankruptcy issues

The Court also finds that state law issues predominate over the bankruptcy issues raised in the state court action. The Complaint is based entirely on state law claims, and although Flintkote invokes Section 544 of the Bankruptcy Code, it does so to provide it with standing to pursue state causes of action to avoid transfers grounded in state law.

ITCAN directs the Court to several cases for the proposition that claims brought under Section 544 are federal question claims. ITCAN also contends that the threshold issue of standing is raised by the Section 544 claims, and that this matter should be resolved by application of federal law. However, the Court's jurisdiction over Section 544 claims is not exclusive, and where, as here, state law claims predominate and the overall weight of the applicable factors favors abstention, the Court concludes that the presence of claims based on Section 544 is insufficient to warrant retention of the Court's jurisdiction. *See e.g. McCarthy v. Prince (In re McCarthy)*, 230 B.R. 414, 418 (9th Cir. BAP 1999) (holding that pursuit of state law fraudulent transfer claims under § 544 is insufficient to prevent remand because "[t]here is nothing wrong with letting a state court decide a matter over which it has concurrent jurisdiction"); *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 926 (Bankr. E.D.Cal.1995).

ITCAN also contends that the California Action implicates federal common law, because "the question of whether to allow Flintkote's claims to proceed in the United States turns on the effect to be given a Canadian statute establishing Quebec as the exclusive jurisdiction for the claims at issue in this case." (D.I. 25 at 22–23). In this regard, ITCAN contends that "[a]llowing Flintkote's claims to proceed in the United States would be an implicit determination that the Canadian statute at issue is invalid." *Id.* at 23. However, the Court is not persuaded that the Canadian statute is necessarily at issue in this case. According to ITCAN, the Canadian statute gives Quebec "exclusive jurisdiction" over any action involving civil liability for "damages suffered in or outside Quebec as a result of exposure to or the use of raw materials, whether processed or not, originating in Quebec." *Id.* Flintkote has not responded to this argument, because it was raised in ITCAN's Reply Brief; however, it is unclear to the Court whether this statute would apply to the type of alter-ego liability on the part of ITCAN alleged by Flintkote. Moreover, the Court is not persuaded that allowing Flintkote's claim to proceed here would be an implicit determination that the Canadian statute is invalid. The only case cited by ITCAN is a case published in French, that contains only a brief summary in English. According to ITCAN, the case demonstrates that "[a] foreign judgment obtained in contravention of Quebec's exclusive jurisdiction will not be recognized or enforced by Canadian courts." *Id.* However, the Canadian company involved was an asbestos manufacturer. Further, the brief English summary of the case contains no mention of the issue of alter-ego liability, which is the issue in this case, and the summary certainly does not suggest that the New York court's decision was a determination, implicit or otherwise, that the Canadian statute at issue was invalid. The effect that the Canadian courts will give to a judgment entered against ITCAN in these proceedings remains to be seen, but that question is not a question for this Court, and is best left to the Canadian courts, if a judgment against ITCAN is, in fact, ob-

tained by Flintkote. Thus, the Court is not persuaded that the impact of the Canadian statute raises foreign law issues for this Court which trump the state law issues in the Complaint. Accordingly, the Court concludes that the predominance of state law claims in this action weighs in favor of abstention.

### 3. The difficulty or unsettled nature of applicable state law

ITCAN contends that the state law issues involved in this action will be questions of Delaware law, while Flintkote contends that California law will apply to the claims. There are valid arguments on both sides of this issue, and the Court is not inclined to engage in a lengthy choice of law analysis in the context of evaluating abstention.[6] Accordingly, the Court concludes that this factor neither supports nor negates abstention.

### 4. The presence of a related proceeding commenced in state court or other non-bankruptcy court

ITCAN contends that another related proceeding is already pending in this case and that is the bankruptcy case pending in this District. However, the Court is required to consider whether a related proceeding is pending in state court or another non-bankruptcy court. Here, the Hopkins Family, Flintkote and others involved in the Flintkote Bankruptcy have filed an action in the California Superior Court, and the Bankruptcy Court was

aware of Flintkote's decision to prosecute this matter in California. Indeed, the Bankruptcy Court took measures to allow the case to proceed in California by approving Flintkote's retention of California counsel and lifting the automatic stay. *Cf. Chambers v. Marathon Home Loans (In re Marathon Home Loans)*, 96 B.R. 296, 300 (E.D.Cal.1989). Accordingly, the Court concludes that this factor favors abstention.

### 5. The jurisdictional basis, if any, other than Section 1334

ITCAN contends that this Court has jurisdiction under 28 U.S.C. § 1331 over the claims asserted by Flintkote against ITCAN under Section 544 of the Bankruptcy Code. However, as the Court previously noted, the causes of action asserted by Flintkote under Section 544 are based upon state law claims. The Court has found several cases concluding that Section 544 claims are federal questions[7], and others concluding that Section 544 claims based on state law are not federal questions. *Breed Technologies v. Allied Signal Inc.*, 128 F.Supp.2d 743, 746 (D.Del.2001), *rev'd on other grounds*, 298 F.3d 263 (3d Cir.2002); *Nat'l City Bank v. Coopers & Lybrand*, 1985 WL 6424 (D.Minn.1985), *aff'd*, 802 F.2d 990 (8th Cir.1986). Given this divergence in the case law, the Court is not persuaded that the basis for the exercise of jurisdiction under Section 1331 is firm. Moreover, as the Court pointed

---

**6.** Even if ITCAN is correct and Delaware law applies, the Court is not persuaded that this requires a transfer of the California Action to this Court in these circumstances. Indeed, the cases ITCAN cites from California demonstrate that the California courts are capable of applying the law of the State of Delaware. *See e.g. State Farm Mutual Automobile Ins. Co. v. Superior Court*, 114 Cal.App.4th 434, 443, 444, 8 Cal.Rptr.3d 56 (2003) (applying Delaware law to lawsuit regarding the issuance of corporate dividends); *Grosset v. Wenaas*, 35 Cal.Rptr.3d 58, 66 (2005) (applying

Delaware law to determine standing in derivative action). Further, the Court notes that ITCAN has argued before the Bankruptcy Court that California law applies to the alter ego claims against it which, in the Court's view, undercuts ITCAN's argument that this factor should weigh against abstention.

**7.** *See e.g. Rahl v. Bande*, 316 B.R. 127, 136–137 (S.D.N.Y.2004); *In re Finley*, 286 B.R. 163, 170 (Bankr.W.D.Wash.2002).

out in its discussion of the predominance of state law claims, this Court's jurisdiction over the Section 544 claims is concurrent with the state court. Because the existence of federal question jurisdiction under Section 1331 is unclear, and the primary basis for jurisdiction, without a doubt, is Section 1334(b), the Court concludes that this factor also weighs in favor of abstention.

### 6. The degree of relatedness or remoteness to the bankruptcy case

As the Court noted in its analysis of the first factor, the degree of relatedness of this action to the bankruptcy case is slight. The pendency of the California Action is not necessary to the development of the plan and can be pursued by representatives of the estate, by a subsequent chapter 11 or chapter 7 trustee, or by a trust established for the benefit of creditors pursuant to a confirmed plan. While it is true that the Bankruptcy Court may have to approve any settlement of the state court action, the Court is not persuaded that that nexus is sufficient to cause this factor to weigh against abstention. Accordingly, the Court concludes that this factor weighs in favor of abstention.

### 7. The substance rather than the form of an asserted "core" proceeding

As discussed by the Court in the context of the other factors related to abstention, the Court has concluded that state law predominates over the issues in this case. Indeed, Flintkote's Section 544 claims are, as a substantive matter, based on state law. Therefore, the Court concludes that this factor also weighs in favor of abstention.

### 8. The feasibility of severing the state law claims from core bankruptcy matters

Both ITCAN and Flintkote argue against severance, with the main debate being whether the whole action should be transferred to this Court or the whole action should be left in the California court. Accordingly, the Court concludes that this factor neither weighs in favor of nor against abstention.

### 9. The burden on the Court's docket

With respect to the burden that this action may place on the Court's docket, the Court also concludes that this factor is neutral. On the one hand, the Court will be faced with issues related to the Flintkote bankruptcy regardless of whether this action is transferred to this Court or not. On the other hand, it is also true that this action is likely to result in prolonged discovery and a lengthy trial implicating issues primarily of state law. Accordingly, the Court concludes that this factor neither fully supports nor fully negates abstention.

### 10. The likelihood of forum shopping

With respect to this element, each party accuses the other of forum shopping. In the Court's view, however, the suggestion by Flintkote that ITCAN is forum shopping is more plausible than the ITCAN's accusations against Flintkote. Although ITCAN accuses Flintkote of forum shopping, its argument is more fairly premised on the fact that Flintkote selected Delaware for its bankruptcy proceedings and should be bound to that forum. By contrast, there is a suggestion in the record that ITCAN is seeking the transfer of this action for the ulterior motive of challenging this Court's personal jurisdiction over ITCAN. Although ITCAN contends that this Court is the proper venue for this case, ITCAN purports to reserve all jurisdictional defenses stating:

> By filing this Petition, ITCAN does not, and has not agreed to, accept or attorn to the jurisdiction of any court within the United States. ITCAN re-

serves any and all of its rights in the underlying litigation, including the right to contest personal jurisdiction over IT-CAN in the appropriate forum.

(D.I. 3 at 1 n. 3). As Flintkote points out, ITCAN appeared generally in the California Action and filed an answer without moving to quash service of process. While this Court declines to comment on the California court's jurisdiction over ITCAN with any certainty, it does appear to the Court that the question of personal jurisdiction over ITCAN in this venue is more questionable.[8]

 Further, there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, and ITCAN has not demonstrated to the Court's satisfaction that the presumption should be disregarded here. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).[9] ITCAN contends that there is a presumption in favor of "home court" venue in the district where the debtor's bankruptcy proceeding is pending. However, it appears to the Court that the presumption to which ITCAN refers applies in the context of considering the transfer of bankruptcy proceedings pursuant to 28 U.S.C. § 1412. Moreover, this presumption, is typically used to benefit the debtor. *See e.g. In re Harnischfeger Indus., Inc.,* 246 B.R. 421, 440 (Bankr. N.D.Ala.2000) ("[T]his presumption exists to help the debtor, not to facilitate forum shopping for co-defendants."). By con-

trast, Flintkote, as the Debtor in this case, has selected a forum different than its pending bankruptcy case, and the Court is not persuaded that the home court presumption should be used against the Debtor to invalidate its choice of forum for litigation in these circumstances.[10]

### 11. The existence of a right to a jury trial

Flintkote contends that the parties to the California Action have demanded a jury trial in this action, in part because of the personal injury claims involved. Flintkote contends that this weighs in favor of abstention. However, ITCAN contends that it is unclear whether Flintkote has a right to a jury trial under either Delaware or California law with respect to its alter ego claims. Regardless of whether a jury trial is needed or not, this Court is suited as well as the California court to conduct such a jury trial. Accordingly, the Court concludes that this factor is neutral with respect to the abstention analysis.

### 12. The presence of non-debtor parties

As Flintkote points out, the Hopkins Family, Plant and ITCAN are all non-debtor parties. The Hopkins Family are California residents whose lawsuit is based on activities occurring in California. IT-CAN contends that the presence of these parties does not weigh in favor of abstention in light of the interrelatedness between the California Action and the bank-

---

**8.** In the Court's view, the lack of certainty regarding this Court's jurisdiction over IT-CAN is yet another factor, aside from the twelve factors typically used in the abstention analysis, which weighs in favor of abstention here.

**9.** Although *Piper* is a forum non conveniens case, courts have considered the plaintiff's choice of forum in cases discussing remand, *see e.g. Shubert v. Roche Holding Ag,* 157 F.Supp.2d 542, 547 (E.D.Pa.2001); *Drexel,*

130 B.R. at 408; and cases discussing remand consider the same factors as those used in the abstention analysis. *Gorse v. Long Neck, Ltd.,* 107 B.R. 479, 482 (D.Del.1989).

**10.** The Court also notes that the ACC and the FCR have joined Flintkote and the Hopkins Family as co-plaintiffs in pursuing this litigation in California. Thus, Flintkote's choice of forum also has the support of the three main constituencies in its Chapter 11 case.

ruptcy case. However, the Court is not persuaded by ITCAN's argument and has concluded that the California Action will not significantly impact Flintkote's underlying bankruptcy. Accordingly, the Court concludes that the presence of non-debtor parties also weighs in favor of abstention.

13. The use of Section 157(b)(5)

In addition to the preceding factors, the Court is compelled in light of the specific circumstances in this case to discuss an additional factor; specifically, the purpose and use of Section 157(b)(5). The purpose of Section 157(b)(5) is to centralize the administration of the bankruptcy estate and eliminate having multiple forums adjudicate different parts of the bankruptcy case. The Third Circuit has not addressed the precise contours of Section 157(b)(5); however, in those cases in which it has been addressed, it has typically been invoked by a debtor who is named as a defendant or co-defendant in the action. ITCAN has not identified, and the Court cannot locate, a single case using Section 157(b)(5) to thwart the decision of a debtor/plaintiff to commence an action in a jurisdiction different than where the debtor's bankruptcy is pending.

In pointing this out, the Court is not saying that Section 157(b)(5) can never be invoked by a nondebtor. Indeed, Section 157(b)(5) contains no language limiting its application in this way, and the Court in *Dow Corning* stated that

> Section 157(b)(5) should be read to allow a district court to fix venue for cases pending against nondebtor defendants which are "related to" a debtor's bankruptcy proceedings pursuant to Section 1334(b). This approach will further the prompt, fair, and complete resolution of all claims "related to" bankruptcy proceedings, and harmonize Section 1334(b)'s broad jurisdictional grant with

the oft-stated goal of centralizing the administration of a bankruptcy estate.

However, in *Dow*, the nondebtor requests for transfer were only made in cases where Dow Corning had also been named as a co-defendant. ITCAN also directs the Court to the Third Circuit's decisions in *Pacor*, 743 F.2d at 984, and the Bankruptcy Court's decision in *Federal–Mogul*, 282 B.R. 301 (Bankr.D.Del.), *mandamus denied*, 300 F.3d 368 (3d Cir.2002), *cert. denied*, 537 U.S. 1148, 123 S.Ct. 884, 154 L.Ed.2d 851 (2003); however, in both of those cases the courts denied the transfer requests of nondebtor defendants. Indeed, it appears to the Court that in the vast majority of those cases in which nondebtors have requested transfers, courts have remanded the matter after removal, or abstained from exercising jurisdiction. *See e.g. Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir.2001) (denying nondebtor's transfer request under § 157(b)(4)); *Asbestos Litig.*, 271 B.R. 118, 124 (S.D.W.Va. 2001) (remanding after removal by nondebtors); *Luevano v. Dow Corning Corp.*, 183 B.R. 751, 752 (W.D.Tex.1995) (abstaining and in the alternative remanding in the case of removal by nondebtor co-defendant in context of Section 157(b)(5)); *In re Harnischfeger Indust. Inc.*, 246 B.R. at 439 (remanding in part due to debtor's refusal to join in motion to transfer venue pursuant to 28 U.S.C. § 1412). Thus, as a practical matter, it appears that motions to transfer are typically not granted over the objection of the debtor. *Pacor*, 743 F.2d at 996 ("Bankruptcy jurisdiction ... was not conferred for the convenience of those not in bankruptcy ...."). Indeed, ITCAN itself acknowledges that the debtor's consent to the transfer may be a factor to consider in the abstention analysis. (D.I. 25 at 17). In this case, Flintkote as the Debtor, along with its major constituencies, the ACC and the FCR, oppose transfer of the California Action to Delaware.

Accordingly, the Court concludes that the Debtor's opposition to the transfer, coupled with the lack of precedent for applying Section 157(b)(5) to frustrate the debtor/plaintiff's choice of forum are additional factors that weigh in favor of abstention.

### 14. Summary

In sum, the Court concludes that the relevant factors are either neutral or weigh in favor of abstention. Accordingly, the Court concludes that it should exercise its discretion to abstain from exercising jurisdiction over this matter.

### CONCLUSION

For the reasons discussed, the Court will exercise its discretion to abstain from exercising jurisdiction over the California Action and deny ITCAN's Emergency Petition For An Order Of Transfer Pursuant To 28 U.S.C. § 157(b)(5).

An appropriate Order will be entered.

### ORDER

At Wilmington, this 13 day of June 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Emergency Petition For An Order Of Transfer Pursuant To 28 U.S.C. § 157(b)(5) is **DENIED**.